[Civ. No. 22402. Second Dist., Div. Three. Mar. 6, 1958.]

HAZEL M. RIVETT et al., Appellants, v. EARL C. NELSON, JR., et al., Respondents.

270

Albert J. Forn for Appellants.

John K. Ford, Belcher, Kearney & Fargo, Lester E. Olson and Donald Murchison for Respondents.

SHINN, P. J.—Hazel M. Rivett and Rowena B. Tilton brought the present action to recover damages arising from their purchase of 20 machines for vending policies of automobile travel insurance from defendant Continental Service Corporation, which was the alter ego of defendants Sol H. Oppenheim and Herbert Oppenheim. The other defendants in the action are Swett and Crawford, Inc., a firm of underwriting managers and agents, Earl C. Nelson, Inc., an insurance brokerage firm, Earl C. Nelson, Jr., and A. W. McCready, Jr., the president of Continental Service Corporation. At the trial, which was to a jury, plaintiffs recovered judgment against the Oppenheims and against Continental Service Corporation. However, upon the making of an opening statement by plaintiffs' counsel, each of the remaining defendants moved for a nonsuit. Their motions were granted; plaintiffs appeal from the ensuing judgment of nonsuit.

The complaint stated six causes of action against defendants. The first cause of action alleged that defendants "acted in concert and as co-adventurers in pursuit of a common scheme or plan; and each defendant was empowered by the

others to act, and did act, as the agent of the others; and each and all of the things alleged to have been done by defendants, or by any of them, were done in their capacity as co-adventurers and as agents for each other."

The second cause of action re-alleged the foregoing and alleged further that on or about August 10, 1953, defendants represented to plaintiffs that they would sell and deliver to each plaintiff 10 coin-operated vending machines designed to sell accident insurance policies to the public; that defendants had obtained leases on twenty locations for the machines and would assign and deliver 10 of said leases to Mrs. Rivett and 10 to Mrs. Tilton; that the Insurance Corporation of Ireland, Ltd., had contracted with defendants to issue accident insurance policies to be sold to the public through the machines; that said corporation had been approved by the Insurance Commissioner to do business in California; that the policies would be written by Earl C. Nelson, Inc., a licensed insurance broker; and that defendants would put the machines in the lease locations and in operating order within a week or 10 days after the purchase thereof by plaintiffs. It was also alleged that the said representations were made in order to induce plaintiffs to purchase 10 vending machines; that in reliance upon the representations each plaintiff executed a written contract for the purchase of 10 machines for a price of $2,500 plus tax; that $2,587 was paid to defendants by Mrs. Rivett and $2,575 by Mrs. Tilton. It was further alleged that the representations were false and were known by defendants to be false; defendants had none of the machines in their possession and could not and did not intend to deliver them to plaintiffs; defendants had not obtained lease locations for the machines; the Insurance Corporation of Ireland, Ltd., had not contracted with defendants to issue the policies and had not been approved by the Insurance Commissioner to do business in California; and defendant Earl C. Nelson, Inc., was unable to write the policies and had no intention of doing so.

In their third cause of action, plaintiffs alleged the making of other false representations by defendants, to wit, that each machine would sell a minimum of one accident policy per day and would average a minimum profit of $90 per year. The fourth cause of action alleged that on or about October 15, 1953, upon discovery of the falsity of defendants' representations, plaintiffs rescinded their contracts and demanded restoration of the purchase price of the machines, but that

defendants have failed and refused to comply with their demand. The fifth cause of action alleged that defendants breached the written contracts of purchase by failing to perform any of their promises and undertakings thereunder. In the sixth cause of action, plaintiffs alleged that defendants breached a written warranty dated August 15, 1953. The answers denied the material allegations of the complaint.

The following is the substance of the opening statement made by plaintiffs' counsel. On being questioned by defendants' attorney, he conceded that it was a full and complete statement of all the facts he expected to prove upon the trial.

Mrs. Rivett and Mrs. Tilton are widows. In the summer of 1953 they were approached by Sol and Herbert Oppenheim, who are father and son. The Oppenheims disclosed to plaintiffs ''a wonderful project which is going to make money for them.'' Plaintiffs were each to purchase 10 coin-operated vending machines which would be used to sell policies of automobile travel insurance. The policies dispensed by the machines would be in the amount of $5,000 and would remain in force for one week at a cost of $1.00 to the policyholder; each policyholder could purchase a second $5,000 policy for an additional $1.00. The ten machines would cost $2,500. The Oppenheims showed plaintiffs a printed profit breakdown sheet which indicated that 10 machines would gross $350 per week, less $35 to the owner of the lease locations and $227.50 as the cost of the policies, leaving a weekly net profit of $87.50 on 10 machines. The Oppenheims told plaintiffs that Earl C. Nelson, Inc. would prepare the policies, which were to be issued by the Insurance Corporation of Ireland, Ltd. The Oppenheims promised to furnish lease locations for the machines. On or about August 28, 1953, Mrs. Rivett and Mrs. Tilton each purchased 10 machines from the Continental Service Corporation, which was controlled by the Oppenheims.

A. W. McCready, Jr., was the president of Continental Service Corporation. He was present during conversations between the Oppenheims and plaintiffs in which the Oppenheims made some of the representations alleged in the complaint to be fraudulent; McCready knew the representations were false yet remained silent. August 15, 1953, McCready wrote a letter to each of the plaintiffs in which he said: ''We guarantee that at the end of one year's period from the placement of the ten (10) machines that you have purchased, that these machines will have sold a minimum of 3650 insurance policies. If they do not do so, we will return the $2,500.00 you have expended for these machines. Very truly

yours, Continental Service Corporation, A. W. McCready, Jr., President." August 27th, McCready wrote another letter to each of the plaintiffs in which he said: "May we take this opportunity to commend you on your fine judgment of a business opportunity and assure you that the returns will more than justify your expectations. . . . You have placed your feet upon the road that will inevitably lead to financial security."

Swett and Crawford prepared sample policy contracts and its employes negotiated with the Insurance Commissioner in an unsuccessful effort to obtain permission for the Insurance Corporation of Ireland, Ltd., to do business in California. On the side of one of the vending machines which the Oppenheims exhibited to plaintiffs appeared a list of thirteen addresses and telephone numbers in various cities in California and Oregon; the addresses were of offices maintained by Swett and Crawford in those cities. The addresses and phone numbers were given to the Oppenheims by Swett and Crawford. July 28, 1953, a Swett and Crawford employe, one Mr. Vogler, wrote a letter to Earl C. Nelson, Jr. in which he stated: "This will serve to confirm our several discussions regarding the captioned. We can assure your office, the owners and purveyors of the dispencers used for the sale of Travel Accident insurance of a policy in a reputable insurance market. We look to you for the payment of premiums earned under policies dispenced through these machines. Needless to say we are extremely interested with the plans of distributing the popular travel accident policy. If we can be of any service to you, Continental Service Corporation or their distributors, please do not hesitate to call upon us." Swett and Crawford and Nelson allowed the Oppenheims to show the letter to plaintiffs.

Earl C. Nelson, Inc. maintained offices in the same Los Angeles office building as Swett and Crawford. It had the same telephone number as Swett and Crawford and its telephones operated through the same switchboard. In September or October 1953, an attorney for Continental Service Corporation told Mrs. Rivett that Continental "couldn't go any further with this project because Earl Nelson had failed to get the insurance policy which he had promised to do." Mrs. Rivett then went to see Mr. Nelson. On the floor in one corner of Nelson's office was one of the vending machines; Nelson had some sample policies on his desk. In the words of plaintiffs' counsel, Nelson said "he was working with Swett and Crawford and with the Oppenheims on this project

and he assured her he was still going to get this policy.'' Nelson told her ''he could get it. And he told her this was a good project, that he only wished he had the time, he would buy twenty of those machines himself and make the same profit that had been guaranteed to Mrs. Rivett. And he told her that she should be patient that this policy would be forthcoming and everything would turn out all right. And then Mrs. Rivett told Mr. Nelson that she hadn't even gotten the machines yet and Mr. Nelson told her: 'Well, you will be getting them, don't worry about it.' So that Mr. Nelson was speaking for the Continental Service Corporation, Oppenheims, as well as for Swett and Crawford.''

At the conclusion of the foregoing opening statement, plaintiffs' attorney told the jury: ''Well, that about sums up what we will present here in court but I want to repeat, I think I have already mentioned Mrs. Tilton and Mrs. Rivett relied on each of these names and on the statements each of these people made, whether it was in writing, through letters or whether it was oral as the Oppenheims presented it to them and if it were not for these names, Mrs. Tilton and Mrs. Rivett will both testify to this effect, if it were not for these names and the good reputation of these firms here, Mrs. Tilton and Mrs. Rivett wouldn't have parted with their money because just the Oppenheims alone wouldn't have been sufficient to induce them.''

██ In deciding a motion for nonsuit based upon an opening statement, every fact which counsel has stated as among the matters to be proved, together with all favorable inferences reasonably to be drawn therefrom, must be accepted by the court as facts which would be proved if the case were tried. (*Moffitt* v. *Ford Motor Co.*, 117 Cal.App. 247, 251 [3 P.2d 605].) If those facts entitle the plaintiff to some relief, and there is no admission that matters set up by way of defense are true, it is error to order the nonsuit. (16 Cal.Jur.2d 207.) In our opinion, the nonsuits as to Earl C. Nelson, Inc., and Mr. Nelson were proper, but we are of the view that the court erred in ordering nonsuits as to Mr. McCready and Swett and Crawford.

██ With respect to McCready, plaintiffs alleged in their second and third causes of action that he was guilty of fraud, and the facts which counsel stated he expected to prove and the reasonable inferences would have supported a verdict in favor of plaintiffs upon those counts. McCready was the president of Continental Service Corporation. He was appointed to that position by the Oppenheims, presumably in furtherance

of their promotional scheme. Since plaintiffs purchased the vending machines from Continental, it was a reasonable assumption that the corporation was to deliver the machines and to arrange for the assignment of the lease locations to plaintiffs. If such was the case, it was also a reasonable assumption that McCready knew that Continental was not in a position to deliver the machines or to obtain the lease locations or that he was not justified by the information he possessed in causing or permitting plaintiffs to believe and rely upon the representations. McCready was present during conversations between plaintiffs and the Oppenheims; he heard the representations made by the Oppenheims at those times as an inducement to plaintiffs to purchase the machines. Counsel did not disclose in his opening statement what representations were made to plaintiffs in McCready's presence, but we must presume that upon the trial Mrs. Rivett or Mrs. Tilton would have testified to the details of the conversations and that they related to the representations alleged.

If false and fraudulent statements were made to plaintiffs while McCready was present, it was a permissible, although not necessary inference from McCready's familiarity with the Oppenheims' promotional scheme that he knew or should have known the statements to be false and that the Oppenheims were endeavoring to deceive Mrs. Rivett and Mrs. Tilton. Silence, under the circumstances, was tantamount to a positive assertion that the statements of the Oppenheims were true. We cannot say as a matter of law that the jury could not reasonably have concluded that McCready was a knowing participant in the fraud committed by the Oppenheims.

 However, the facts outlined in the opening statement were wholly insufficient to establish a cause of action against Mr. Nelson or Earl C. Nelson, Inc. It was not asserted by counsel that they received any of the proceeds from the sale of the machines, that they made any false statements to plaintiffs, or that they authorized or had knowledge of any misrepresentations made by the Oppenheims.

Plaintiffs' entire argument is that the facts were sufficient to establish a joint venture for the sale and promotion of the machines and the sale of accident insurance policies through the machines, that plaintiffs entered into the transaction with Continental Service in reliance upon the existence of a joint venture, and that the Nelsons should be estopped to deny that a joint venture existed. The argument is without merit.

▇ A joint venture is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. (*Nelson* v. *Abraham,* 29 Cal.2d 745 [177 P.2d 931].) There must be a community of interest in the enterprise; a sharing of profits and losses; and some joint participation in the conduct of the business. (28 Cal.Jur.2d 478-480.) ▇ The existence of a joint venture is ordinarily shown by evidence of an express agreement or by evidence of the acts and conduct of the members thereof. A joint venture may also be created by estoppel. ▇ One who consents to being represented by another as a joint adventurer may be estopped to deny that he is a joint adventurer as to third persons who enter into a transaction in reliance upon an ostensible agency (*Hansen* v. *Burford,* 212 Cal. 100 [297 P. 908] ; *Foster* v. *Fisher,* 44 Cal. App.2d 33 [111 P.2d 935]), and who have dealt with the ostensible agent as an agent of the purported joint venture, not as a principal. (*Luft* v. *Arakelian,* 33 Cal.App. 463, 466 [165 P. 712].)

▇ However, the facts which plaintiffs expected to prove point irresistibly to the conclusion that they did not deal with the Oppenheims, with McCready and with the corporation in reliance upon the Nelsons' participation in a supposed joint venture. Plaintiffs' negotiations were exclusively with the former and their contract was with the corporation. Although the Oppenheims told plaintiffs that they were working on the project with Nelson, that statement would not establish them as the agents of the Nelsons, either actual or ostensible, for the reason that an ostensible agency is created by the representations of the principal, not by those of the purported agent. (*Boren* v. *State Personnel Board,* 37 Cal.2d 634, 643 [234 P.2d 981], and cases cited.)

No facts were stated in the opening statement to the effect that the Nelson defendants did or said anything which would render them responsible for the representations made by the Oppenheims. No error was committed in granting the motions for nonsuit of Earl C. Nelson and Earl C. Nelson, Inc.

▇ Our conclusion is different with respect to the corporation Swett and Crawford. The ultimate question for the trial court with respect to the responsibility of that defendant was whether the evidence which plaintiffs intended to introduce would have warranted a jury in concluding that Swett and Crawford intentionally or by want of ordinary care caused plaintiffs to believe that the Oppenheims were speaking for Swett and Crawford, as well as for themselves, in representing

to prospective purchasers that policies of insurance would be available for sale through the machines.

If the jury could properly have given an affirmative answer to this question, based upon the evidence plaintiffs proposed to introduce, as related in the opening statement, it was error to grant a nonsuit as to Swett and Crawford. If the jury would have believed that the purpose of Vogler's letter was to encourage and aid in the sale of the machines by the Oppenheims and that the statements in the letter were to be used by the Oppenheims in their representations to prospective purchasers, a reasonable conclusion would have been that Swett and Crawford constituted the Oppenheims its agents for the purpose of making that representation. Even if the Oppenheims were not expressly authorized to make the representation on behalf of Swett and Crawford there would have been equal responsibility if plaintiffs could reasonably have believed that such was the purpose of Swett and Crawford. In other words, it would be immaterial whether the agency was actual or ostensible, and we do not doubt that the circumstances, sought to be proved, were such as to have warranted the plaintiffs in believing that the representation was made by Oppenheims on behalf of Swett and Crawford as well as on their own behalf. The law of ostensible agency is stated in sections 2300, 2315, 2317 and 2334 of the Civil Code. It was purely a factual question whether such a belief assertedly engendered in the minds of plaintiffs was intentional upon the part of Swett and Crawford or merely the result of want of ordinary care. On this point we need only refer to *House Grain Co.* v. *Finerman & Sons,* 116 Cal.App.2d 485, 491 [253 P.2d 1034], for a pertinent application of the code sections.

The facts sought to be proved would not have established a partnership or a true joint venture, but that was not the question. Plaintiffs proposed to prove that Swett and Crawford and the Oppenheims were engaged in a common enterprise. The Oppenheims were selling the machines; Swett and Crawford was to furnish the policies without which the machines would have been worthless and could not have been sold. The scheme was indivisible. The machines could not have been sold without positive assurance that policies would be provided. It was only through the sale of policies that purchasers of the machines could have recouped their investments and made any profit. We do not doubt that a jury would have concluded that the principal inducement to the plaintiffs in

making their investments was that policies would be furnished by Swett and Crawford for sale through the machines. We must assume that all the evidence that was favorable to the plaintiffs and encompassed within the opening statement of counsel would have been produced. This would include testimony by the plaintiffs that they relied upon the representation that Swett and Crawford would provide the policies and that but for this belief and reliance they would not have purchased the machines.

Although the complaint accused Swett and Crawford of fraud counsel did not in the opening statement make that accusation. But fraud was not an element of the responsibility of Swett and Crawford, which was to be determined solely under the theory of ostensible agency. If plaintiffs were misled by the assertions made in Vogler's letter into a belief that the Oppenheims were speaking as the agents of Swett and Crawford, good faith on the part of the latter would not relieve it of responsibility. If there was negligence in the issuance of Vogler's letter any claim on the part of Swett and Crawford that the letter only expressed an opinion or belief would be untenable if plaintiffs understood the statement to be of a fact, that is to say, if they understood that Swett and Crawford knew policies would be available. Swett and Crawford had superior knowledge; plaintiffs were two widows seeking a safe investment of money that had come to them upon the death of their husbands. They had no knowledge of the facts with respect to the availability of policies and could have been expected to have none. They had to rely upon the representations that were made to them and the fact that they made the investments would be persuasive evidence that they did rely upon the representations. We cannot give serious consideration to the contention of Swett and Crawford that plaintiffs exhibited a want of ordinary care in failing to make an investigation as to the truth of the representations that were made to them. They were not required to make an investigation as to the truth of the statement that Insurance Corporation of Ireland, Ltd., had contracted with Swett and Crawford to provide the accident policies nor were they required to make an investigation in order to ascertain whether the insurance corporation was licensed to do business in California. (23 Cal.Jur.2d p. 84.) We conclude that the court was clearly in error in granting the motion of Swett and Crawford for judgment of nonsuit.

The judgment is affirmed insofar as it is in favor of Earl C.

Nelson and Earl C. Nelson, Inc., and is reversed insofar as it is in favor of A. W. McCready, Jr. and Swett and Crawford; the respective parties to bear their own costs of appeal.

Wood (Parker), J., and Vallée, J., concurred.