[Civ. No. 24767.   Second Dist., Div. Two.   Sept. 16, 1960.]

ADAMS MANUFACTURING AND ENGINEERING COM-
PANY (a Corporation), Appellant, v. COAST CENTER-
LESS GRINDING COMPANY (a Corporation), Re-
spondent.

[Civ. No. 24801.   Second Dist., Div. Two.   Sept. 16, 1960.]

ADAMS MANUFACTURING AND ENGINEERING COM-
PANY (a Corporation), Respondent, v. COAST CEN-
TERLESS GRINDING COMPANY (a Corporation) et
al., Defendants; ROBERT H. BLACK, Appellant.

650

Larwill & Wolfe for Appellant in No. 24767 and Respondent in No. 24801.

Clement H. Jacomini for Appellant in No. 24801.

William J. Cusack for Respondent in No. 24767.

ASHBURN, J.—Before us are two appeals arising from the judgment in *Adams Manufacturing and Engineering Company* v. *Coast Centerless Grinding Company, a corporation, and Robert H. Black,* Superior Court No. 716854. Plaintiff sued to recover the value of services rendered and materials furnished to respondents Coast Centerless Grinding Company (hereinafter designated as Coast) and Robert H. Black, in the construction of two oil well pumps. The complaint is in two counts, the first of which is directed at defendant Coast alone and the second against Coast and its codefendant Black. The court rendered judgment in favor of defendant Coast, but also rendered judgment by default against Black in the sum of $6,542.10, plus interest and costs. From the judgment in favor of Coast plaintiff appeals (2nd Civ. No. 24767), and from the judgment against Black he appeals (2nd Civ. No. 24801).

The first count of the complaint alleges that Coast became indebted to plaintiff within two years past in the sum of $6,542.10 for materials furnished and labor performed in the fabrication of two oil well pumping machines; that the work was done and materials furnished at the request of defendant Coast, payment demanded of said defendant and no part paid. Defendant Black is not mentioned in that cause of action. The second count incorporates by reference the allegations of the first cause of action and adds: "Plaintiff is informed and believes and therefore states the fact to be that at all times herein mentioned defendants Coast Centerless Grinding Company, a corporation and Robert H. Black were partners engaged in the production of the aforesaid two oil well pumping machines and for which machines plaintiff furnished said labor and materials, as aforesaid." Judgment for $6,542.10 plus interest and costs is prayed against both defendants. On September 25, 1959, the clerk entered Black's default. Coast answered denying all material allegations of the complaint and the cause came on for trial on January 28, 1960, without a jury. No judgment had been rendered against Black at that time.

The pretrial order incorporates a stipulation of counsel which says: "The only apparent issue is the liability of the

defendant Coast Centerless Grinding Company for the labor and materials furnished by plaintiff on said oil well pumping machines. In the determination of this issue it will be necessary for the Court to determine the relationship of the two defendants and to determine whether or not there was a joint venture (a co-partnership) between them which will make the defendant Coast Centerless Grinding Company liable for the money due to plaintiff.'' Plaintiff-appellant's briefs say: "The question involved in this appeal is: Did a *joint venture* exist between the two defendants in the action, one defendant being the respondent here, Coast Centerless Grinding Company, and one Robert H. Black. If a *joint venture* did exist, as appellant contends, then the respondent (as a joint-venturer with the other defendant) is as fully liable to this appellant as the trial court found the said co-defendant to be''; "Respondent, in its Statement of the Case, says: '. . . that the question of the existence of a joint venture is one of the questions involved in this appeal.' Appellant contends it is the *only* question involved. Throughout the entire action respondent repeatedly stated that as far as it was concerned, joint venture was the only issue. Respondent stipulated with appellant in their joint pre-trial statement that this was the only issue, and in the Pre-Trial Conference Order this was said to be the issue.''

As a result of the trial the court found that defendant Coast had not become indebted to plaintiff in any sum for or on account of materials and labor furnished or performed in the fabrication of two oil well pumping machines or otherwise, and that it is not true that defendant Coast requested that any of said work be done by plaintiff or that any of said materials be furnished by plaintiff. Also: "The court finds that it is not true that defendants Coast Centerless Grinding Company, a corporation, and Robert H. Black were partners or joint venturers engaged in the production of the oil well equipment described in plaintiffs' complaint as two oil well pumping machines.'' Judgment was rendered as above indicated.

### Appeal of Adams—No. 24767

Plaintiff, as appellant, argues that the defendants were partners or joint venturers and that Coast was therefore liable to plaintiff because of the activities of Black and his implied agency for his coadventurer. The argument rests upon a written agreement between the defendants, supplemented by

oral evidence concerning their respective acts in development of Black's invention relating to oil well pumps and the patent rights covering same. Appellant's opening brief says: "Appellant (plaintiff below) was in the manufacturing business. Defendant Robert H. Black requested plaintiff to furnish labor, and some of the materials, to construct two of said oil well pumps, between 2 September and 29 October, 1957. (Admitted by Pre-Trial Statement and Pre-Trial Conference Order.)" The agreement recites Black's ownership of the invention and covering patent rights, also the previous payment by Coast (designated as assignee) of $5,000 to Black (assignor) "for use in the development and construction of two units of said invention." The parties agree that said $5,000 has been so used in the development of the invention and the construction of two units of same; "and the assignee agrees to advance the total sum of Six Thousand Dollars ($6000.00) if such an amount is required to complete the two units referred to and install one of such units in a working well. Should the cost of the first two units including the cost of installing one of them in a working well exceed the sum of Six Thousand Dollars ($6000.00), the assignor will pay such additional cost." Black assigns to Coast "an undivided 50 percent (50%) of said entire and exclusive right, title and interest" in the invention and patent rights thereon. In paragraph IV the assignee agrees to pay to assignor for the rights so transferred and assigned the sum of $24,000, $5,000 being acknowledged as previously paid and the balance to be payable in nine installments of $2,000 each "commencing on the 1st day of the month after the two units now under construction are completed and sold and have proven meritorious to the extent that additional orders have been received by assignee. . . . The assignee may discontinue the payment of said monthly installments at any time that it may determine that the device covered by this agreement will not prove satisfactory to the trade, and may withhold the payment of such installments until the merits of said device are established." Paragraph V says that "in the event the marketing of said device should prove to be unprofitable to the assignee, the assignee may elect to reassign to assignor all of the rights transferred to it pursuant to this agreement, and in such event, and upon tender of a reassignment of such rights, the assignee [sic] agrees within thirty days (30) thereafter to repay, or cause to be repaid to assignee, all sums

theretofore paid or advanced by assignee pursuant to the provisions of this agreement including the sum of Six Thousand Dollars ($6000.00) advanced by assignee and used in the development and construction of the first two units.'' Assignee is given the first right to purchase the other 50 per cent interest provided said assignee meets any offer made therefor by another prospective buyer.

The agreement bears the complexion of a mere sale of an interest in a patented invention, certainly does not spell a joint venture or partnership. ▮ ''A joint venture is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. (*Nelson* v. *Abraham*, 29 Cal.2d 745 [177 P.2d 931].) There must be a community of interest in the enterprise; a sharing of profits and losses; and some joint participation in the conduct of the business. (28 Cal.Jur.2d 478-480.) ▮ The existence of a joint venture is ordinarily shown by evidence of an express agreement or by evidence of the acts and conduct of the members thereof.'' (*Rivett* v. *Nelson*, 158 Cal.App.2d 268, 276 [322 P.2d 515].) ▮ Moreover, the sale of such an interest in a patent right confers such an interest in the assignee that ''[e]ach of them may use or license others to use the invention without the consent of his fellows, and without responsibility to such fellows for the profits arising from such use or license.'' (*Talbot* v. *Quaker-Oil Refining Co.*, 104 F.2d 967, 968, 969.) ''Joint owners of a patent right have interests which are distinct and separate in their nature. The use of a patent right is different from the use of any other property, and in determining the rights, powers, and liabilities of coowners of patents it is not safe to follow the rules adopted with respect to coowners of ordinary chattels. The nature of a patent is such that joint owners in it are at the mercy of each other. ▮ Generally, in the absence of a special agreement, each coowner may manufacture, use, and sell the patented invention with or without the consent of his coowner, no matter how small his interest may be, without liability to account for his individual use of the invention, and without being liable to account for profits. . . .'' (69 C.J.S. § 219, p. 733.)

▮ The court received parol evidence on the subject and plaintiff-appellant argues therefrom that a joint venture arose as a matter of law. We do not say that a finding of the existence of such a venture would not have been sustained if made; but the evidence on this subject is in substantial

conflict, we are not authorized to reweigh it (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231]); the court found "that it is not true that the defendant Coast Centerless Grinding Company, a corporation, requested that any of said work be done by plaintiffs or that any of said materials be furnished by plaintiffs"; and we cannot say that as a matter of law a joint venture was established. It follows that the portion of the judgment in favor of Coast must be affirmed.

### APPEAL OF BLACK—No. 24801

The clerk entered Black's default on September 25, 1959, but no judgment was entered until after the trial of January 28, 1960. This was proper practice, for the instant case was not one in which the clerk was authorized to enter judgment. (See *Lynch* v. *Bencini*, 17 Cal.2d 521, 529, 530 [110 P.2d 662]; *Mirabile* v. *Smith*, 119 Cal.App.2d 685, 689 [260 P.2d 179]; 28 Cal.Jur.2d § 34, p. 659). Nor was the action severable as to defendants because the cause of action alleged against Black was predicated solely upon the alleged existence of a joint adventure or partnership between the two defendants; in such a situation there can be but one judgment in the action (*Mirabile* v. *Smith, supra,* at p. 689).

The rule is definitely established that where there are two or more defendants and the liability of one is dependent upon that of the other the default of one of them does not preclude his having the benefit of his codefendants establishing, after a contested hearing, the nonexistence of the controlling fact; in such case the defaulting defendant is entitled to have judgment in his favor along with the successful contesting defendant.

The principle is illustrated by *Plott* v. *York*, 33 Cal.App.2d 460 [91 P.2d 924], a case involving a principal and his agent. Both were sued for a tort for which liability, if any, depended upon activity of the agent. The principal defaulted but the agent successfully defended. It was held that the principal though in default was likewise entitled to a judgment in his favor. At page 463, the court said: "This action, so far as the defaulting employer was concerned, was predicated upon the sole theory of *respondeat superior*. The defenses interposed by the answering defendant employee were not personal to himself (as are the defenses of infancy, coverture, or bankruptcy on the part of the pleader), but they were common to both the answering defendant and his em-

ployer who defaulted. In other words, the defenses interposed by the answering defendant went to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant. The defenses interposed by the answering defendant in the case before us questioned the validity of merits of plaintiffs' entire cause of action in general, and when such defenses prove successful they enure to the benefit of the defaulting defendant, and final judgment must therefore be entered not only in favor of the answering defendant, but in favor of the defaulting defendant as well. After verdict and judgment for the defendant who pleads in cases such as this, the plaintiff cannot take judgment against the defendant in default, for the reason that upon the whole record it appears that plaintiff has no right of action." At page 464: "Certainly it would not be fair or just to enter a judgment upon default against a defendant who is only secondarily liable, if liable at all, until there is a successful determination of the suit against a defendant charged with being primarily liable. (34 Cor. Jur., pp. 150, 151, § 357.) Plaintiffs having elected to present their application for final judgment against the defaulting defendant in connection with the trial of the action as to the answering and allegedly primarily liable defendant York, and to allow the jury to assess the damages, if any, at that time, the court properly instructed the jury that as a prerequisite to their assessing damages against the defaulting defendant, they should determine the question of liability of the answering and primarily liable defendant. By their verdict, the jury, in determining that the defendant charged with being primarily liable was not responsible for damages suffered by the plaintiffs, thereby established that plaintiffs had no cause of action growing out of the accident in question against any of the defendants involved therein, and the trial court was correct in refusing to enter a final judgment in favor of such plaintiffs against the defaulting defendant." The principle was applied in *Mirabile* v. *Smith, supra,* 119 Cal.App.2d 685, at 689, wherein the defendants were sued as partners. To the same effect see *Nicholls* v. *Anders,* 13 Cal. App.2d 440, 444 [56 P.2d 1289]; *Freeman* v. *Churchill,* 30 Cal.2d 453, 461 [183 P.2d 4]; 49 C.J.S. § 191 (4), page 330; 28 Cal.Jur.2d § 34, page 659.

The portion of the judgment awarding plaintiff recovery

against defendant Black must be reversed with instructions to enter judgment in favor of said defendant.

This renders moot the Black appeal from an order denying his motion to set aside the default and judgment.

The portion of the judgment in favor of defendant Coast Centerless Grinding Company is affirmed; the portion of the judgment against the defendant Black is reversed with instructions as aforesaid; the Black appeal from order denying his motion to set aside default and judgment is dismissed.

Fox, P. J., concurred.

A petition for a rehearing was denied October 13, 1960, and the petition of appellant in No. 24767 and respondent in No. 24801 for a hearing by the Supreme Court was denied November 9, 1960.