[No. B232495. Second Dist., Div. Three. Oct. 11, 2011.]

WESTERN HERITAGE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WILLIAM PARKS et al., Real Parties in Interest.

## COUNSEL

Selman Breitman, Alan B. Yuter and Rachel E. Hobbs for Petitioner.

No appearance for Respondent.

AlderLaw, Michael Alder; Stoll, Nussbaum & Polakov, Robert J. Stoll, Jr., and Robert J. Stoll III for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—In this case, petitioner, Western Heritage Insurance Company (Western Heritage), provided a defense to its insured, a commercial provider of home health care services, in an action for damages resulting from an automobile accident. The claim arose from an accident in which the insured's employee drove in an allegedly negligent manner and plaintiffs' decedent, her passenger, was injured. In addition to allegations that the insured's employee negligently caused the accident, it is also claimed that she failed to seek or obtain medical treatment for the decedent following the accident and he later died from his injuries. The claim against the insured was based on the allegation that the employee had been acting in the course and scope of her employment. Thus, the insured's alleged liability was vicarious in nature.

Western Heritage provided a defense to not only the insured, but also to the employee. It did so under a reservation of rights to dispute coverage under the general liability policy that it had previously issued to the insured. (See fn. 7, *post.*) During pretrial proceedings, the employee failed to provide verified discovery responses or appear for her deposition, all in violation of the trial court's orders. At this point, it was disclosed that Western Heritage had filed an answer on the employee's behalf without having been in contact with her. As a result, her answer was stricken and her default was entered. Western Heritage, in order to protect its own interests, timely moved to intervene in the action. The trial court granted that motion but, at the request of plaintiffs, subsequently ordered that Western Heritage could only dispute damages, not the liability of the employee.[1]

Western Heritage filed a petition for a writ of mandate. We issued an order to show cause and a stay of further trial court proceedings. After a review of the record and the relevant case law, we have concluded that the trial court's order was erroneous. Western Heritage, as an intervener, has the right to assert, on its own behalf, all defenses that otherwise would be available to the insured parties whether as to liability or damages. We will therefore grant the requested writ relief.

## *FACTUAL AND PROCEDURAL BACKGROUND*[2]

This action was filed on May 11, 2009, by plaintiffs (and real parties in interest herein), William Parks and Paula Parks (the Parkses) and the estate of George Brooks Parks (decedent).[3] The Parkses are the adult children of decedent who died following an automobile accident which occurred on September 23, 2008. The decedent had been a passenger in a vehicle being driven by Julia Reyes (Reyes) which, due at least in part to her alleged negligence, collided with another vehicle. At the time of the accident, Reyes was acting in the course and scope of her employment by Gratefull Home Care, Inc. (GHC). Both Reyes and GHC were named as defendants in

---

[1] Since the claim against the insured was vicarious and depended upon evidence of the employee's wrongful conduct, this order effectively precluded Western Heritage from contesting liability at all. In a case such as this, the employer's liability is coextensive with that of the employee. (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1157 [126 Cal.Rptr.3d 443, 253 P.3d 535].)

[2] The background facts that we recite are based upon the record before us, including, most specifically, the allegations in plaintiffs' third amended complaint, which necessarily provide the basis for Western Heritage's potential exposure as a liability insurer. Although we discuss the facts as alleged by plaintiffs, we express no opinion as to their truth or falsity, or whether they establish any basis for legal liability of defendants and/or Western Heritage. Those are issues that will have to be addressed at the trial of this matter.

[3] These parties are collectively referred to as plaintiffs.

plaintiffs' complaint.[4] Plaintiffs filed their third amended complaint on or about November 12, 2009, and alleged seven causes of action, including (1) vehicular negligence—wrongful death and (2) general negligence—negligent hiring—wrongful death.[5]

### 1. Allegations of Plaintiffs' Complaint

On or about August 31, 2007, GHC and decedent entered into a contract pursuant to which GHC agreed to provide decedent with home health care services. In order to induce the execution of the health care agreement, GHC had made certain representations to the Parkses as to the quality of the health care services that would be provided to decedent as well as to the competence of the caregiver employee who would be assigned by GHC to provide those services to decedent.

On September 23, 2008, such agreement was in full force and effect and Reyes was the assigned caregiver. At 4:45 p.m. on that date, Reyes was acting in the course and scope of her employment by GHC and was driving her own vehicle in which decedent was a passenger. At the intersection of Wilshire Boulevard and Stanley Avenue in the City of Los Angeles, Reyes was attempting to make a left turn when her vehicle was struck by the Castellon vehicle. The collision was due to the negligence of both Reyes and the driver of the Castellon vehicle.

After the accident, decedent, who suffered from dementia, complained of head pain. Reyes did not seek or obtain medical treatment for him, but simply took him home, gave him his dementia medication, and put him to bed. The next morning, decedent was found dead. The cause of death was a brain injury that decedent had suffered as a result of the accident.

In addition to the alleged negligence of Reyes in operating her vehicle and failing to obtain medical care, plaintiffs also allege that GHC had represented

---

[4] Also named as defendants were Robin A. Baladjay and Rona Dimabuyu who were allegedly the owners, officers, directors and/or shareholders of GHC as well as, along with Reyes, agents, servants, representatives and/or employees of GHC. In addition, Carlos Castellon and Hilda Castellon were named as defendants and allegedly were husband and wife who had "owned, operated, maintained [and] controlled . . ." the 1995 Nissan Quest motor vehicle that collided on September 23, 2008, with the vehicle being driven by Reyes and in which decedent was a passenger. Plaintiffs alleged that the Castellons were also negligent. Reporter's transcripts indicate an appearance for Apollo Couriers, Inc., another defendant, apparently aligned with the Castellons.

[5] In addition to causes of action for vehicular negligence—wrongful death (count 1) and general negligence—negligent hiring—wrongful death (count 2), plaintiffs also pled causes of action for breach of contract (count 3), breach of the implied covenant of good faith and fair dealing (count 4), negligent misrepresentation (count 5), breach of warranty—violation of Civil Code section 1770 (count 6) and elder abuse—violation of Welfare and Institutions Code section 15600 et seq. (count 7).

that Reyes was an experienced and competent caregiver and that she had cleared a background check. Such representations were false and, in fact, GHC (1) had not even required Reyes to fill out an application for her employment as a caregiver, (2) had never verified her experience, (3) had never determined her level of competence and (4) had never completed a background check on her.[6]

### 2. *Western Heritage Provides a Defense*

Western Heritage had issued a one-year general liability policy to GHC on January 26, 2008, which policy was in effect on the date of the accident. The defense of this action was tendered to Western Heritage on or about May 14, 2009, and the insurer agreed to provide a defense to both GHC and Reyes subject to a reservation of rights.[7] In discharge of such defense responsibility, Western Heritage retained counsel to represent GHC and Reyes. An answer to plaintiffs' complaint was timely filed on behalf of both.

### 3. *Reyes's Default Is Entered*

Subsequent to the filing of Reyes's answer, plaintiffs made requests for discovery from Reyes. In addition, they noticed her deposition. Despite multiple court orders requiring her to do so, Reyes failed to provide verified responses to such discovery requests and failed to appear for her deposition.[8] On April 7, 2010, pursuant to the request of plaintiffs, Reyes's answer was stricken and her default was entered by the trial court clerk. However, no default judgment was ever requested or entered.

### 4. *Western Heritage Is Permitted to Intervene*

On June 14, 2010, Western Heritage filed an ex parte motion seeking leave to file a complaint in intervention in order to protect its own interests in light of the striking of Reyes's answer and the entering of her default. Western

---

[6] We note in passing that the Supreme Court has recently had occasion to consider the viability of such additional claims in those vicarious liability cases where the employer has conceded that the employee was acting in the course and scope of the employment. (See *Diaz v. Carcamo, supra,* 51 Cal.4th 1148.)

[7] Western Heritage reserved its right to deny and dispute coverage under the policy, apparently on the ground that the general liability policy's automobile exclusion would preclude coverage for this accident and any claim for damages arising therefrom.

[8] The record suggests the possibility that Reyes may have left the country and returned to her native Philippines. Irrespective of where she may have gone, it is undisputed that she failed to comply with discovery requests and related court orders and, in the words of the trial court, "is in the wind."

Heritage claimed that it had a direct and immediate interest in the litigation and its ultimate outcome in light of the provisions of Insurance Code section 11580, subdivision (b)(2).[9] It expressly sought leave to intervene in order to dispute "the issues of *liability and damages* against . . . Reyes." (Italics added.) The trial court, on July 12, 2010, granted Western Heritage's intervention motion.

### 5. *The Scope of Western Heritage's Role at Trial Is Limited*

At the time that Western Heritage filed its motion to intervene, plaintiffs' motions in limine were pending. One such motion sought to preclude defendants from disputing Reyes's liability "on her behalf because she is in default and she is not represented." The motion was granted; however, as the motion was made prior to Western Heritage's motion to intervene, Western Heritage never had an opportunity to oppose it. A dispute subsequently arose as to whether Western Heritage would be permitted to litigate the issue of Reyes's liability at trial.

On January 12, 2011, at a hearing intended to resolve the issue of how Western Heritage would be identified at trial,[10] plaintiffs' counsel argued that Western Heritage should be identified as an insurer for the defaulted Reyes, *present only to dispute the amount of damages.* Counsel for Apollo Couriers joined this argument, stating that because Reyes had defaulted, she could not contest her liability vis-à-vis the other driver, and that, as Western Heritage was stepping into her shoes, it could not do so either. The trial court agreed, and concluded that Western Heritage could litigate only damages.

Thereafter, Western Heritage filed a formal motion in limine, in an effort to persuade the trial court to change its ruling. On April 19, 2011, the trial court reaffirmed its earlier ruling and held that Western Heritage had no greater rights to litigate liability than its insured would have had. As its insured

---

[9] Insurance Code section 11580, subdivision (b)(2), is sometimes referred to as the "direct action" statute (section 11580(b)(2)). Section 11580 provides that no policy insuring against loss or damage resulting from liability for an injury suffered by another person shall "be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein. [¶] . . . [¶] (b) [¶] . . . [¶] (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, *then an action may be brought against the insurer on the policy and subject to its terms and limitations*, by such judgment creditor to recover on the judgment." (Italics added.)

[10] Western Heritage wanted its counsel to be identified as counsel for Reyes; plaintiffs wanted Western Heritage to be identified as an insurer for the defaulted Reyes. The trial court ruled that Western Heritage would be identified as an unnamed intervener who may have an interest in the outcome of the case.

(Reyes) had defaulted, Western Heritage could not litigate liability.[11] The trial court expressly relied on the case of *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 219 [39 Cal.Rptr.3d 33] (*Kaufman & Broad*) as the basis for its ruling.

Western Heritage filed a timely petition for writ relief in this court. We issued an order to show cause and stayed further trial court proceedings.

## CONTENTIONS

Western Heritage argues that (1) as an intervening party, its right to litigate all issues cannot be abridged; (2) denial of the right of an intervening insurer to contest liability of a defaulted insured as well as the issue of damages would undermine and defeat the whole purpose of the intervention right; and (3) an intervening insurer is not "subrogated" and thus limited to the rights of its insured, but rather has rights independent of the insured. In opposition, plaintiffs do not attempt to justify the trial court's ruling on the bases on which it was obtained. Instead, they argue, for the first time, that the trial court's ruling can be upheld due to the facts that (1) Western Heritage never filed a formal motion to vacate Reyes's default and (2) Western Heritage was providing a defense to GHC and Reyes under a reservation of rights.

As we explain, we believe that Western Heritage has the better of the argument. As an intervening insurer, its rights do not depend on, nor are they limited by, the rights of the defaulted insured. Thus, it is irrelevant that Western Heritage made no formal set aside motion; nor does it matter that it was providing a defense under a reservation of rights. We will therefore grant Western Heritage's petition for writ relief and will remand with directions.

## DISCUSSION

1. *General Principles Relating to Insurer Intervention in Third Party Action Against Its Insured*

██ As already noted (see fn. 9, *ante*), section 11580(b)(2) "provides insurance policies issued in California shall either contain the following

---

[11] While Reyes may have been an additional insured under the general liability policy Western Heritage had issued to GHC, GHC was Western Heritage's named insured. As to GHC, the parties agreed, with trial court approval, that GHC could argue issues of Reyes's comparative fault, but was barred from arguing that she was not negligent at all. (GHC did not take issue with this, stating that it had no intention of arguing that Reyes was not negligent.) The trial court's ruling, that GHC could contest the apportionment of damages but Western Heritage could contest only their amount, was justified on the apparent rationale that Western Heritage's intervention had nothing to do with its insured, GHC, and was instead permitted only to allow it to "step into [Reyes's] shoe[s]" once she had defaulted.

provision or shall be construed as if this provision is in the policy: 'A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.' Thus, a judgment creditor who has prevailed in a lawsuit against an insured party may bring a direct action against the insurer subject to the terms and limitations of the policy. [Citation.]" (*Kaufman & Broad, supra,* 136 Cal.App.4th at p. 223.)

■ This exposure to such direct liability has been repeatedly held sufficient to create a basis for insurer intervention in a third party action against the insured.[12] "Intervention may . . . be allowed in the insurance context, where third party claimants are involved, when the insurer is allowed to take over in litigation if its insured is not defending an action, to avoid harm to the insurer."[13] (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 206 [75 Cal.Rptr.3d 481].)

Thus, for example, insurers have been permitted to intervene when the third party has obtained a default against the insured. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 884–885 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*); *Nasongkhla v. Gonzalez* (1994) 29 Cal.App.4th Supp. 1, 3–4 [34 Cal.Rptr.2d 379] (*Nasongkhla*).) Similarly, an insurer may intervene when its insured's answer has been stricken because its corporate status has been suspended. (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 385–387 [100 Cal.Rptr.2d 807] (*Reliance*).) As the *Reliance* court explained, "intervention by an insurer is permitted where the insurer remains liable for any default judgment against the insured, and it has no means other than intervention to litigate liability or damage issues." (*Reliance, supra,* 84 Cal.App.4th at p. 385.)

Thus, it is apparent that the trial court did not err in granting Western Heritage's motion to intervene. Western Heritage had provided a defense to

---

[12] Pursuant to Code of Civil Procedure section 387, the trial court has discretion to permit a nonparty to intervene where the following requirements are satisfied: (1) the proper procedures have been followed; (2) *the nonparty has a direct and immediate interest in the action*; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346 [70 Cal.Rptr.2d 255] (*Truck*).)

[13] Intervention, however, is not permissible if the insurer has denied coverage and refused to defend its insured. " 'An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured.' " (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 717–718 [10 Cal.Rptr.3d 724].)

its insured (GHC) and its insured's employee (Reyes). When that employee defaulted, there was a risk that Western Heritage could be liable for any judgment entered against Reyes under section 11580(b)(2). Therefore, Western Heritage had a sufficient interest to justify intervention.

### 2. The Trial Court Erroneously Limited Western Heritage's Intervention Rights to Damages Issues

There are three bases on which Western Heritage contends the trial court's limitation of its intervention right was erroneous: (a) the trial court misperceived the scope of intervention; (b) the entire purpose of allowing an insurer to intervene in an underlying action is to permit it to litigate liability and damages issues its insured is barred from litigating; and (c) the trial court erroneously treated Western Heritage as subrogated to, and thus limited by, Reyes's rights. We discuss each of these arguments separately.

#### a. An Intervening Party Is Not Bound by Another Party's Procedural Defaults

■ " '[A]n intervener becomes an actual party to the suit by virtue of the order authorizing him to intervene.' " (*Deutschmann v. Sears, Roebuck & Co.* (1982) 132 Cal.App.3d 912, 916 [183 Cal.Rptr. 573] (*Deutschmann*).) Indeed, the complaint in intervention[14] should not only set forth the grounds upon which the intervention rests, it should also comply with the rules applicable to pleadings generally.[15] (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 2:443, p. 2-73.)

■ An intervener is not limited by every procedural decision made by a party with which it is aligned. (*Deutschmann, supra*, 132 Cal.App.3d at p. 916.) In *Deutschmann*, the court considered the situation of an insurer which intervened in an action brought by its insured against a third party for damages caused by a fire. The insurer had paid for repairs to the property and was subrogated in interest to its insured. After the insurer intervened, the trial court dismissed the complaint of the insured on the basis that the insured failed to timely file proof of service of the summons. The trial court also

---

[14] Even when the intervener's position is aligned with the defense, its pleading is captioned " 'Complaint In Intervention.' " (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 2:443, p. 2-73 (rev. # 1, 2009).)

[15] In this case, Western Heritage's complaint in intervention set forth only the basis for intervention; it did not set forth the relief it sought at trial. Indeed, its motion for intervention stated that it sought to intervene "so that Western Heritage may set aside the default against Julia Reyes as to the interest of Western Heritage, alone, and thereafter file a Complaint-in-Intervention in exercise of its right to litigate the issues of liability and damages asserted against Ms. Reyes." Western Heritage never sought to set aside the default or file this second, promised, complaint in intervention.

dismissed the complaint in intervention of the insurer, on the basis that its interest was subrogated to that of the insured.[16] (*Id.* at pp. 914–915.) On appeal, the dismissal of the insurer's complaint in intervention was reversed, as the "lack of prosecution on the part of [the] plaintiff [did not] deprive [the] intervener of [its] cause of action . . . ." (*Id.* at p. 917.)

Although, in *Deutschmann*, the insurer's claim was based on its right of subrogation, the court's reasoning has equal application in this case. Just as a plaintiff's procedural default does not bar the claim of an intervening party aligned with the plaintiff, a defendant's procedural default does not bar the defense of an intervening party aligned with the defendant. A party permitted to intervene is permitted to do so in order to pursue its *own interests*. Once permitted to intervene, it is a party to the action not bound by other parties' procedural defaults.

> b. *Cases Permitting Insurers to Intervene Do So in Order to Allow the Insurers to Litigate Liability and Damages Issues Their Insureds Are Prevented from Litigating*

As we discussed above, case authority is in agreement that insurers may intervene in third party actions brought against their insureds in order to protect their own interests when their insureds are unable to defend. While no case *expressly considers* whether the intervening insurers are then entitled to litigate liability and damages issues that their insureds are barred from litigating, this conclusion necessarily follows. Indeed, there would be no purpose in allowing an insurer to intervene in order to protect its *own* interests but then limit the scope of the insurer's defense to those issues to which *its insured*, because of the default, is limited to pursuing.

This is reflected in the language of the cases. In *Reliance, supra,* 84 Cal.App.4th 383, the trial court denied the insurer permission to intervene to represent its own interests when its insured could not defend because its corporate status had been suspended. In reversing this order as an abuse of discretion, the *Reliance* court stated that intervention "will not enlarge the issues in the case, since [the insurer] almost certainly will assert the same defenses which would have been asserted by [its insured] if [its insured]'s corporate status had not been suspended." (*Id.* at p. 387.) Similarly, in *Nasongkhla*, the trial court erred in denying an insurer's motion to intervene in an action in which the insured's default had been entered. The reviewing court stated, "unless [the insurer] is allowed to intervene, it may have no other opportunity to litigate fault or damage issues in any action brought by

---

[16] We will consider the specific circumstances raised by a subrogation claim in part 2.c., below.

plaintiff on its judgment under Insurance Code section 11580." (*Nasongkhla, supra,* 29 Cal.App.4th at p. Supp. 4.)

It is therefore apparent that an intervening insurer is not limited to those defenses to which its insured might be restricted due to the procedural default. The entire purpose of the intervention is to permit the insurer to pursue its own interests, which necessarily include the litigation of defenses its insured is procedurally barred from pursuing.

> c. *Limitations Purportedly Imposed When an Insurer's Claim Is Based on Subrogation Have No Application in This Case*

██ Using an argument they no longer pursue in this writ proceeding, plaintiffs convinced the trial court that Western Heritage must "stand in the [defaulted] shoes" of Reyes, by relying on language from *Kaufman & Broad,* which states that, "[i]n asserting a subrogation claim,[17] the insurer stands in the shoes of its insured, and has no greater rights than its insured. [Citation.] Because the insured cannot pursue its rights in litigation, the insurer cannot do what its insured cannot do and is similarly barred." (*Kaufman & Broad, supra,* 136 Cal.App.4th at p. 219.) There are two reasons why this language is inapplicable to the instant case, and does not limit the arguments that Western Heritage may pursue.

First, Western Heritage is not here pursuing a subrogation claim. Western Heritage seeks to defend an action against its procedurally defaulted insured, in order to protect its own interests, which are implicated due to section 11580(b)(2). Thus, any law relating to subrogation simply does not apply.

Second, it is not true that insurers pursuing subrogation claims stand in the shoes of their insureds at all times. The language quoted from *Kaufman & Broad* stating that subrogated insurers stand in the shoes of their insureds was not part of its holding, but was part of its discussion of the law of an earlier case (*Truck, supra,* 60 Cal.App.4th 342). *Truck,* in turn, discussed subrogation only in dicta, as *Truck* was concerned with a claim for equitable contribution. In *Truck,* two insurers of a suspended corporation sued their insured to rescind their policies. As the insured was suspended, it could present no defense. A third insurer, which had a potential claim for equitable contribution against the two plaintiff insurers, sought to intervene on behalf of the common insured in order to oppose the plaintiff insurers' attempt to rescind their policies. (*Id.* at pp. 345–346.) The *Truck* court held that intervention was proper. The court, in dicta, distinguished the situation of an

---

[17] Plaintiffs' counsel omitted this language from the beginning of the quote. Western Heritage's counsel pointed out the omission to the trial court.

insurer pursuing a subrogation claim, rather than a claim in equitable contribution, on the basis that an insurer with a subrogation claim has no greater rights than its insured. (*Id.* at pp. 349–350.) The *Kaufman & Broad* court discussed this language from *Truck* because, subsequent to *Truck*, the Legislature amended the Revenue and Taxation Code in order to provide that, although a corporation suspended for nonpayment of taxes may not defend an action, the corporation's insurer *may* provide such a defense, and prosecute any related subrogation rights. (*Kaufman & Broad, supra,* 136 Cal.App.4th at p. 219.) Thereafter, the *Kaufman & Broad* court held that an insurer could not pursue these rights by simply litigating in the name of its suspended insured; if the insurer wanted to continue to defend the action against its suspended insured (and pursue its subrogation rights in that action), it was required to intervene. (*Id.* at pp. 221–222.) Moreover, while *Kaufman & Broad* concluded that the amended statute permitted intervention to pursue a subrogation claim with respect to a *suspended corporate insured* in certain circumstances, *Deutschmann* had previously concluded that an intervening insurer could pursue a subrogation claim on the part of a *procedurally defaulted insured.* (*Deutschmann, supra,* 132 Cal.App.3d at pp. 917–918.) Thus, while an insurer's subrogation claim would be bound by a decision *on the merits* in the insured's action (*id.* at p. 916), certain procedural bars to the insured's action *would not* bar an insurer's subrogation claim. The language in *Kaufman & Broad* quoted out of context by plaintiffs simply does not support plaintiffs' argument.

### 3.	*Western Heritage Was Not Required to Vacate the Default Entered Against Reyes*

Having concluded that the trial court's order cannot be upheld on any basis on which it was entered, we now turn to the arguments raised by plaintiffs for the first time in this writ proceeding. Plaintiffs' first such argument is that since Western Heritage did not seek to set aside the default entered against Reyes, it has no basis to complain about the trial court's intervention limitation order. We reject this argument.

The seeds of plaintiffs' argument were planted in *Clemmer.* In *Clemmer,* the third party obtained a default judgment against the insured, then brought a direct action against the insurer under section 11580(b)(2). (*Clemmer, supra,* 22 Cal.3d at pp. 871–872.) The insurer argued that it should not be bound by the amount of the default judgment because it did not have an opportunity to defend. (*Id.* at p. 884.) The *Clemmer* court disagreed, noting that, although the insurer might have received notice of the pendency of the action too late for it to bring a motion to intervene, it could have moved to set aside the

default judgment entered against the insured. (*Id.* at pp. 884–885.) The *Clemmer* court held that an insurer which might be required to satisfy a default judgment against its insured had a sufficient interest to give it standing to bring a motion to set aside that default judgment. (*Id.* at p. 886.) Thus, *Clemmer* held that an insurer seeking to protect its interests when its insured could not defend could *either* intervene in the action *or* have the default judgment set aside. (*Id.* at pp. 884–885; *Belz v. Clarendon America Ins. Co.* (2007) 158 Cal.App.4th 615, 633 [69 Cal.Rptr.3d 864]; *Reliance, supra,* 84 Cal.App.4th at p. 387.)

As a general rule, the choice between whether to seek intervention or move to set the default judgment aside will be determined by the stage the proceedings have reached when the insurer seeks to become involved. An insurer can move to intervene prior to the entry of judgment, or move to set aside the default judgment if that judgment has already been entered.[18] (*Reliance, supra,* 84 Cal.App.4th at p. 387.)

Some confusion has entered the law as the result of a case in which an insurer sought permission to both intervene in an action and vacate the default judgment entered against its insured. (*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459 [258 Cal.Rptr. 907] (*Jade K.*).)[19] The trial court granted permission to intervene, but denied the motion to vacate. (210 Cal.App.3d at p. 1468.) The Court of Appeal reversed, concluding the trial court should have granted the insurer relief by vacating the default judgment. (*Id.* at p. 1470.)

Thereafter, the superior court appellate division cited *Jade K.* for the proposition that "[a]n insurer may, in some circumstances, intervene and set

---

[18] Clearly, if there are no other parties still litigating the action, an insurer cannot intervene in an action after a default judgment has been entered against its insured, as there will be no pending action in which to intervene. In contrast, if the action is still pending against a party which may be jointly liable with the defaulting insured, it is improper to enter judgment against the defaulting defendant while the action remains pending against the other defendant. (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 135(b), p. 573.) Thus, intervention would be possible.

[19] The chronology of events in *Jade K.* does not actually indicate that the insurer sought permission to intervene. The day after the default judgment was entered, the "intervener [insurer] filed a motion to vacate the default judgment against" the insured. (*Jade K., supra,* 210 Cal.App.3d at p. 1464.) The *Jade K.* court interpreted the trial court's subsequent order denying the insurer's motion to vacate the default judgment as an order granting intervention but denying the motion to vacate. (*Id.* at pp. 1464, 1468.) It may be, however, that, using the procedure discussed in *Clemmer,* the insurer sought to pursue its interest solely by means of a motion to vacate the default judgment.

aside a default against its insured as to itself." (*Nasongkhla, supra,* 29 Cal.App.4th at p. Supp. 3.) But *Jade K.* was not concerned with a default, but a default *judgment.*[20] Thus, the *Jade K.* court never considered whether an insurer that had become a party by intervention would, in the absence of a motion to vacate, nonetheless be bound by a default entered against its insured.

■ As discussed above, we have concluded that an intervening insurer is *not* bound by a default taken against its insured. " 'It is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a codefendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party.' "[21] (*Taylor v. Socony Mobil Oil Co.* (1966) 242 Cal.App.2d 832, 834 [51 Cal.Rptr. 764]; see also *Morehouse v. Wanzo* (1968) 266 Cal.App.2d 846, 852–853 [72 Cal.Rptr. 607] [an employer liable under respondeat superior "may take advantage of any favorable aspects of the judgment against the employee, but he is not bound by the issues resolved against the employee by the latter's default"].)

It makes no logical difference whether the nondefaulting codefendant was originally named as a defendant or joined the action, as in this case, by subsequent intervention. A party's default does not bind nondefaulting co-defendants, even when the basis for the action against the codefendants is vicarious liability arising from the acts of the defaulting defendant. Thus, an insurer intervening in an action to pursue its own interests after its insured has defaulted is not required to move to vacate the insured's default as to itself; the insured's default simply has no effect on the insurer.[22] To the extent the language in *Nasongkhla* impliedly states otherwise, we disagree and decline to follow it.

---

[20] The *Nasongkhla* court also cited to *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629–630 [5 Cal.Rptr.2d 742], which stated that *Jade K.* "held that an insurer could intervene and set aside a default *judgment* against its insured to itself." (Italics added.)

[21] Not only is this true, the defaulting defendant may also take advantage of factual determinations resolved in its favor at trial. "[W]here there are two or more defendants and the liability of one is dependent upon that of the other the default of one of them does not preclude his having the benefit of his codefendants establishing, after a contested hearing, the nonexistence of the controlling fact; in such case the defaulting defendant is entitled to have judgment in his favor along with the successful contesting defendant." (*Adams Mfg. & Engineering Co. v. Coast Centerless Grinding Co.* (1960) 184 Cal.App.2d 649, 655 [7 Cal.Rptr. 761].)

[22] We find this conclusion particularly applicable in this case, as Western Heritage is not the direct insurer of Reyes, but is liable only as the insurer of Reyes's employer, GHC. As GHC is not bound in any way by Reyes's default, Western Heritage certainly cannot be bound.

### 4. *Western Heritage's Reservation of Its Right to Dispute Coverage Has No Impact on the Scope of Its Intervention Right*

As their second and final argument in this proceeding, plaintiffs attempt to justify the trial court's order on the basis that Western Heritage was defending Reyes under a reservation of rights. Plaintiffs suggest that permitting Western Heritage to litigate the issue of Reyes's liability under these circumstances would "create an irreconcilable conflict." Plaintiffs are concerned that if Western Heritage litigates Reyes's liability, it may pursue a theory of the case that Reyes was, in fact, liable, but for conduct which falls within a policy exclusion.

■ We clearly held, in our recent decision in *Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1523–1524 [106 Cal.Rptr.3d 729], that an insurer's intervention right could be defeated only by a refusal to defend, not by the mere assertion of a right to *later* dispute coverage while a defense was, in the meantime, provided.[23]

■ Plaintiffs' concern here is that if Western Heritage is permitted to litigate issues of liability, it may, in fact, seek to resolve those issues in a manner which will enable it to ultimately deny coverage. We disagree. Coverage issues are simply not at issue in this case (unless the parties stipulate otherwise). "A liability insurer normally cannot intervene in a tort action against its insured to contest whether the claim against the insured is covered under its policy. The judgment in the tort action collaterally estops the insurer only on issues necessarily adjudicated therein—i.e., the insured's liability and the amount of the injured party's damages. It does not bind the insurer on coverage issues. [Citation.]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 2:430, p. 2-70.1 (rev. # 1, 2011), italics omitted.) This case concerns only whether Reyes and GHC are liable for decedent's death and, if so, in what amount. Unless the parties so choose, the jury will not be asked to determine, for example, whether and/or to what degree decedent's death was the result of conduct falling within the policy's automobile exclusion. (See fn. 7, *ante*.) There is no irreconcilable conflict as coverage issues are simply not present in this case. These issues will be litigated, if ever, in a subsequent coverage action or in an action under section 11580(b)(2).

---

[23] Before the trial court, plaintiffs argued that *Gray v. Begley* was authority for the proposition that Western Heritage should not be permitted to intervene, as it was defending under a reservation of rights. Plaintiffs do not pursue this argument on appeal and, in fact, do not address *Gray* in their opposition to Western Heritage's writ petition. Instead, they argue that Western Heritage's defense under a reservation of rights creates an irreconcilable conflict. In light of our decision in *Gray*, it most certainly does not. Insurers should not be required to relinquish all rights to contest coverage in order to exercise a right to intervene.

## *DISPOSITION*

Western Heritage's petition for a writ of mandate is granted. Upon remand, the trial court shall vacate its order limiting Western Heritage's intervention right to the contest of damages issues and issue a new and different order directing that Western Heritage may litigate both liability and damages issues. Western Heritage shall recover its costs in this appellate writ proceeding. The stay previously issued shall be vacated upon the filing of the remittitur herein.

Klein, P. J., and Kitching, J., concurred.