Filed 2/23/16  A-American Storage Management v. Tony & Sons Construction CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| A-AMERICAN STORAGE MANAGEMENT CO., INC., | F068379 |
| Plaintiff and Respondent, | (Super. Ct. No. 09CECG02451) |
| v. | |
| TONY & SONS CONSTRUCTION et al., | **OPINION** |
| Defendants and Appellants. | |
| CMSS I, L.P., | |
| Cross-complainant and Appellant; | |
| v. | |
| CASTLEPOINT NATIONAL INSURANCE COMPANY, | |
| Intervener and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County.  M. Bruce Smith, Judge.

Kerley Schaffer and J. Edward Kerley for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

Wood, Smith, Henning & Berman, Patrick S. Schoenburg and Nicholas M. Gedo for Cross-complainant and Appellant.

Nielsen, Haley & Abbott, James C. Nielsen and Mary N. Abbott for Intervener and Respondent.

-ooOoo-

Sometime after CMSS I, L.P. (CMSS) used the services of subcontractor Tony & Sons Construction, Inc. (Tony & Sons) in the construction of self-storage units on real property located on Marks Avenue in Fresno (the property), CMSS sold the property to A-American Storage Management Co., Inc. (A-American). Following the sale, it was discovered that the self-storage units had leaky roofs and other defects, allegedly causing A-American substantial damages. For recourse, A-American initiated two tracks of litigation, one in arbitration and one in the trial court. Since A-American had an arbitration agreement with CMSS, it served a demand on CMSS that it arbitrate A-American's claims against it for breach of contract, breach of warranty and other causes of action. At the same time, A-American filed a complaint in the trial court against Tony & Sons and others, but the complaint did not name CMSS as a defendant. A few months later, the parties in the trial court action stipulated to arbitrate their dispute and requested a stay of the action, which the trial court ordered.

Despite the court-ordered stay and without leave of the court, nonparty CMSS interjected itself into the trial court action by filing a cross-complaint, alleging causes of action for equitable indemnity and express indemnity against Tony & Sons. Tony & Sons' attorney sent a letter objecting to the cross-complaint because CMSS was not a party to the action and because the action had been stayed. Nevertheless, and purely as a precaution, Tony & Sons filed an answer. Sometime later, however, Tony & Sons' attorney substituted out of the case, leaving the corporate entity without an attorney through which to appear or act in the matter. As a result, the trial court eventually struck Tony & Sons' answer and entered its default.

Meanwhile, in the arbitration proceedings, the arbitrator found in favor of A-American and against CMSS in the amount of approximately $1.3 million for breach of contractual warranty. The arbitrator did not find any liability on the part of Tony & Sons to A-American. CMSS swiftly returned to the trial court and requested the entry of a default judgment on its cross-complaint against Tony & Sons in the amount of

2.

$1.3 million—the amount awarded against CMSS in the arbitration. At about the same time, Tony & Sons' insurance carrier, CastlePoint National Insurance Company (CastlePoint), after having delayed in providing a defense because of an alleged lack of adequate information, filed a motion to intervene in the action for the purpose of raising defenses to CMSS's cross-complaint against its insured, Tony & Sons. Both CMSS and Tony & Sons opposed intervention, arguing among other things, that CastlePoint had lost its right to intervene by failing to defend Tony & Sons earlier. The trial court granted CastlePoint's motion to intervene.

CastlePoint then moved to strike the cross-complaint or, alternatively, for judgment on the pleadings. The motion to strike was made on the ground that the cross-complaint was not filed in conformity with law because it was filed by a nonparty and without leave of the court. After taking the matter under submission, the trial court struck the cross-complaint *on its own motion* because the pleading was filed in violation of the stay order. The trial court also noted that CMSS was not a party to the action and "[n]either leave to intervene nor leave to file the cross-complaint was sought." CMSS appeals and Tony & Sons cross-appeals. Both appellants challenge the order striking the cross-complaint, along with the intervention order that purportedly led to that result, contending that several factors militated against the relief granted by the trial court. On balance, after carefully considering the unusual facts and circumstances below, we are unable to conclude that the trial court abused its discretion. In the final analysis, CMSS filed an improper pleading that was subject to a motion to strike, whether on the court's own motion or otherwise, because it was "not drawn or filed in conformity with the laws of this state … or an order of the court." (Code Civ. Proc., § 436, subd. (b).)[1] Accordingly, the order striking the cross-complaint is affirmed.

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

## FACTS AND PROCEDURAL HISTORY

On September 18, 2007, CMSS and A-American entered into a written purchase agreement whereby CMSS agreed to sell, and A-American agreed to purchase, the property, including multiple self-storage units constructed on the property, for a total purchase price of $5.2 million (the purchase agreement). Another entity, CMSS Management, Inc. (CMSS Management), was referred to in the purchase agreement as the general partner of CMSS. The purchase agreement contained an arbitration provision requiring all disputes between the parties to be decided by neutral binding arbitration. Paragraph 25 of the purchase agreement required CMSS to "assign" to A-American "all warranties" and "all … rights" it had against "the contractors, subcontractors, suppliers and materialmen involved in the construction or operation of the Property." Paragraph 28 of the purchase agreement provided that CMSS, as the seller, represented and warranted to A-American, as the buyer, that to the best of CMSS's knowledge, there were "*no material defects presently existing in the roof systems*, plumbing or electrical systems, mechanical systems or basic structural components or any other portion of the Property," and that the property was "free of any material problems, including, but not limited to … drainage problems …." (Italics added.)

Sometime after taking possession of the property, A-American allegedly discovered a number of material defects, including leaks in the roof, lack of adequate pitch on the roof, improper installation of roof panels, and roofing materials not "drip formed," all of which allegedly resulted in property damage due to water intrusion, mold contamination and loss of use of the property. As described more fully below, A-American sought recourse under two litigation tracks—one in arbitration and one in the trial court, each involving substantially the same allegations but naming different defendants.

In July 2009, A-American served on CMSS and CMSS Management a written demand for arbitration. The demand, although not a court-filed pleading, included causes

4.

of action against CMSS and CMSS Management for breach of contract, rescission, breach of express warranty, breach of implied warranty, negligence, intentional misrepresentation and negligent misrepresentation. A copy of the purchase agreement was attached to the demand for arbitration.

In July 2009, A-American *also* filed a complaint in the trial court naming as defendants Tony & Sons, Tony Jose Lopez (Lopez), an individual, and Terrance John Cox (Cox), an individual. The complaint's background factual allegations relating to the alleged material defects and the resulting damage to the property were the same as was stated in the demand for arbitration. Although CMSS's role as seller of the property was mentioned in the complaint, CMSS was not named as a defendant therein, presumably because of its agreement to arbitrate. The complaint alleged that the purchase agreement between CMSS and A-American contained a provision that CMSS "assigned to [A-American] all warranties and all SELLERS' rights against the contractors, subcontractors, suppliers and materialmen involved in the construction or operation of the Property, including Defendants TONY & SONS and LOPEZ." A copy of the purchase agreement was attached to the complaint. The complaint included allegations that Tony & Sons and Lopez performed construction of certain improvements (i.e., self-storage units) on the real property. By inference from the allegations, Lopez was apparently the principal operator or owner of Tony & Sons; and Cox, by similar inference, was apparently the principal operator or owner of CMSS. Additionally, the complaint alleged in conclusory terms that Cox was the alter ego of CMSS. The complaint set forth causes of action for breach of contract, rescission, breach of express warranty, breach of implied warranty, negligence, intentional misrepresentation, negligent misrepresentation and alter ego.

On November 20, 2009, after the trial court received a stipulation of the parties to arbitrate the dispute set forth in the above complaint and a request to stay the action, the trial court issued its order that the action was "stayed, as to all parties and all causes of

5.

action, pending completion of the agreed-upon alternative dispute resolution procedure and issuance of the arbitrator's binding decision .…"

On June 4, 2010, CMSS interjected itself into the trial court action by filing a pleading that purported to be a cross-complaint against Tony & Sons. The cross-complaint was filed notwithstanding the stay order and despite the fact that CMSS was not a party to the trial court action. CMSS's cross-complaint alleged that Tony & Sons' negligence as a subcontractor in the construction of improvements on the property made Tony & Sons primarily responsible for the property damages suffered by A-American. The causes of action set forth in the cross-complaint included equitable indemnity and express indemnity.

On June 11, 2010, Robert Cervantes, who was then the attorney for Tony & Sons, sent a letter to CMSS's attorney, Steven McQuillan, objecting to the fact that CMSS had served both a cross-complaint and a request for production of documents on Tony & Sons. Cervantes objected that "neither document seems to be appropriate" because (1) "the proceedings in the Superior Court are stayed" by court order and (2) CMSS "is not a party to this action" and, thus, had no standing to cross-complain against Tony & Sons. Cervantes asked that McQuillan "voluntarily strike the cross-complaint." In addition, Cervantes further objected to the discovery request on the ground that CMSS and Tony & Sons were both going to be parties in the arbitration with A-American and discovery in the arbitration would commence when the arbitrator was appointed. On June 16, 2010, McQuillan responded that he believed the cross-complaint was proper because "CMSS … is the proper party and [Cox] should never have personally been named" in the complaint. Also, McQuillan indicated that it seemed best to file the cross-complaint in the trial court because it was unclear the extent to which Tony & Sons was going to participate in the arbitration.

On July 8, 2010, Tony & Sons filed an answer to the cross-complaint. Cervantes wrote to McQuillan and explained that the answer was being filed as a cautionary

pleading only, "pending resolution of the CMSS issue." Cervantes also made it clear that his client, Tony & Sons, had only agreed to arbitrate the dispute with A-American and Cox, not the claims that CMSS may have against Tony & Sons.

On September 30, 2010, Tony & Sons' attorney (Cervantes) substituted out of the case, leaving the corporation without any legal representation or ability to appear in court. On April 13, 2011, in connection with a continued discovery motion filed by CMSS, the trial court struck Tony & Sons' answer to the cross-complaint and entered default.

Meanwhile, in the arbitration proceedings, the arbitrator heard evidence on the submitted claims on May 23, 24, 25, and 26, 2011. On February 29, 2012, after taking the matter under submission, the arbitrator issued an award of approximately $1.3 million in favor of A-American against CMSS. The liability was based on the cause of action for breach of express warranty. The arbitrator found that CMSS, via Cox, had knowledge of the roof defects at the time of the sale. With respect to Tony & Sons, the arbitrator noted that although Tony & Sons had stipulated to arbitration, it did not appear at the hearing. Nevertheless, the arbitrator stated that no default would be entered in the arbitration proceedings because all claims in arbitration must be established. The arbitrator found that Tony & Sons was a subcontractor on the project and had no privity of contract with A-American, a subsequent purchaser of the property. Therefore, it appeared to the arbitrator that Tony & Sons did not owe a duty of care to A-American, and the arbitrator could not think of any theory under which Tony & Sons would owe such a duty. Accordingly, and inasmuch as the arbitrator was "unaware of any cross-action" by CMSS against Tony & Sons, the arbitrator dismissed Tony & Sons.

A-American filed a petition in the trial court to confirm the arbitration award. On July 3, 2012, the trial court confirmed the arbitration award and entered judgment in favor of A-American and against CMSS (and CMSS Management) in the sum of

7.

approximately $1.3 million plus interest. Additionally, A-American's case or complaint against Tony & Sons et al. was ordered dismissed.

On March 9, 2012, CMSS filed a statement of damages in the trial court in support of its cross-complaint against Tony & Sons, which statement was filed for the purpose of obtaining a default judgment against Tony & Sons. The statement of damages claimed as CMSS's damages under the cross-complaint, the amount of damages awarded against CMSS in the arbitration, plus costs incurred in defending that matter, for a total damage claim against Tony & Sons in excess of $1.3 million.

On May 31, 2012, CMSS filed an application for a default judgment on its cross-complaint against Tony & Sons, asking the trial court to enter a default judgment in the amount of $1,373,826.40 against Tony & Sons. On June 1, 2012, CastlePoint[2] filed its motion to intervene in the trial court action. CastlePoint's motion sought to file a complaint-in-intervention against CMSS as a means of asserting defenses to the cross-complaint filed by CMSS against Tony & Sons. Both matters were heard on June 28, 2012. The trial court denied without prejudice the request for default judgment because CMSS had failed to introduce sufficient evidence to establish a prima facie case. The motion to intervene was postponed to accommodate CMSS's request to depose CastlePoint's claim representative, Linda Reilly, and to allow the parties to file supplemental briefs.

In opposing the motion to intervene, CMSS argued that CastlePoint had lost the right to intervene in the action because it allegedly failed or refused to defend Tony & Sons. CMSS also argued the motion was untimely, due to CastlePoint's alleged delay or lack of diligence. In early 2013, Tony & Sons and Lopez also filed papers opposing the motion. Tony & Sons and Lopez agreed with CMSS that CastlePoint had lost any right to intervene due to its failure to provide a defense at an earlier time. Moreover, according

---

[2] CastlePoint was formerly known as SUA Insurance Company.

to Tony & Sons and Lopez, because CastlePoint had refused to provide a defense, Tony & Sons and Lopez had entered into a settlement arrangement with CMSS to protect themselves financially. Under that arrangement, Tony & Sons agreed it would not seek to set aside the default and would assign all of its rights against CastlePoint to CMSS. In exchange, CMSS agreed it would not execute on any judgment it obtained against Tony & Sons or Lopez. Tony & Sons and Lopez expressed their concern that if CastlePoint were permitted to intervene and succeeded in challenging the cross-complaint, the benefit of their advantageous settlement arrangement with CMSS would be lost. For similar reasons, they also argued that CastlePoint's attorneys had a conflict of interest in regard to intervention, since CastlePoint's interest was, at that time, in conflict with Tony & Sons' and Lopez's interests.

On January 31, 2013, after supplemental briefing, further discovery and further oral argument, the trial court took CastlePoint's motion to intervene under submission. On March 18, 2013, the trial court granted the motion to intervene. The trial court's ruling included a finding that "the supplemental papers filed by CastlePoint demonstrate that CastlePoint did not know of the cross-complaint against Tony Lopez and Tony & Sons … until April of 2012" and, therefore, the motion was not untimely. Having been granted leave, CastlePoint proceeded to file its complaint-in-intervention. The complaint-in-intervention included the following allegation: "CastlePoint is the insurance carrier for [Tony & Sons] and has a direct interest in this matter that the Court has found justifies CastlePoint being granted leave to intervene. As intervene[e]r, CastlePoint may assert against CMSS any defenses that CastlePoint or [Tony & Sons] may have against CMSS and the Cross-Complaint."

On April 5, 2013, CastlePoint filed its motion to strike the cross-complaint or, in the alternative, for judgment on the pleadings. As noted, the motion to strike challenged the cross-complaint because CMSS was not a party to the action and did not have leave of the court to intervene. The alternative relief seeking a judgment on the pleadings

9.

argued that CMSS could not recover as a matter of law because (1) the pleadings showed that CMSS assigned all of its rights against Tony & Sons to A-American; (2) CMSS had no viable claim for equitable indemnity against Tony & Sons; and (3) there was no contract to support the claim of express indemnity.

On May 10, 2013, CMSS filed its opposition to CastlePoint's motion to strike and/or for judgment on the pleadings. The opposition claimed that CMSS had standing to file the cross-complaint because CMSS *should have been* named as a party, and in any event, even if there was procedural error in filing the cross-complaint, CMSS argued it became moot when Tony & Sons filed an answer. CMSS then presented its further argument for why it believed the motion for judgment on the pleadings should likewise not be granted.

In addition to opposing CastlePoint's motion, CMSS filed a *renewed* application for default judgment, which application was scheduled to be heard at the same hearing as CastlePoint's motion to strike and/or for judgment on the pleadings. The combined hearings were held on June 20, 2013, and, following oral argument, both matters were taken under submission by the trial court.

On July 31, 2013, the trial court issued its written order. The order expressed the trial court's ruling as follows: "Pursuant to … § 436[, subdivision ](b), the Court strikes, *sua sponte*, the CMSS cross-complaint. Based thereon, the alternative motion for judgment on the pleadings is moot as is CMSS'[s] renewed application for default judgment." After pointing out that a stay of the action had been imposed and that CMSS was not a party to the complaint, the trial court explained its ruling as follows: "Notwithstanding the stay, on June 4, 2010 CMSS [heretofore a stranger to the action] filed a cross-complaint against Tony & Sons …. Neither leave to intervene nor leave to file the cross-complaint was sought. [Tony & Sons] answered the cross-complaint despite the stay, there being no leave, as well as the fact it was a cross-complaint filed by a stranger to the litigation. [¶] Pursuant to … section 436, courts are authorized to strike

10.

a pleading at any time in their discretion. [Section] 436[, subdivision ](b) provides that a court may strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court. The CMSS cross-complaint was not filed in conformity with the Civil Code of Procedure [*sic*] or the court's November 20, 2009 order staying this action. Thus, the court strikes the CMSS cross-complaint *sua sponte*, granting CMSS leave to file a petition seeking leave to intervene or they may elect to file a completely independent action. Consequently, the court finds the alternate motion for judgment on the pleadings and CMSS'[s] renewed application for default judgment to be moot."[3]

CMSS's notice of appeal followed. The notice of appeal stated that CMSS was appealing from the trial court's order striking CMSS's cross-complaint "and all underlying interlocutory orders."[4] Several days later, Tony & Friends filed a notice of cross-appeal. Our discussion below will begin with the appeal by CMSS. In a separate heading thereafter, we will discuss the cross-appeal by Tony & Friends.

## DISCUSSION

### I.     Standard of Review

The trial court's order is entitled to a presumption of correctness on appeal, and the appellant bears the burden of affirmatively demonstrating prejudicial error. (§ 475; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 528; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*); *Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 556–557.) An order striking a pleading is reviewed under the

---

**3**     The trial court's explanation of its ruling was prefaced by the observation that "[c]learly, it is an understatement to say there have been a few irregularities [procedurally and otherwise] in this matter."

**4**     In some instances, an order striking a complaint may be tantamount to a final judgment against the party (*Adohr Milk Farms, Inc. v. Love* (1967) 255 Cal.App.2d 366, 370) and, hence, it is appealable. In connection with such an appeal, an otherwise nonappealable, intermediate ruling affecting the merits thereof may likewise be reviewed. (§ 906; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 89–90, pp. 150–153.)

11.

abuse of discretion standard. (*Pacific Gas & Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23; *Leader v. Health Industries of America, Inc*. (2001) 89 Cal.App.4th 603, 612.) An abuse of discretion occurs when the trial court's ruling exceeded the bounds of reason, all the circumstances before it being considered. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282; *Denham*, *supra*, at p. 566.) We also recognize that the scope of discretion "'always resides in the particular law being applied'" and, therefore, an "'action that transgresses the confines of the applicable principles of law'" is outside the scope of discretion and "'we call such action an abuse of discretion.' [Citation.]" (*Pacific Gas & Electric Co. v. Superior Court*, *supra*, at p. 23.)

The trial court's ruling will not be disturbed on appeal unless it is shown that the trial court *clearly* abused its discretion and that the abuse resulted in a miscarriage of justice. (*Quiroz v. Seventh Ave. Center*, *supra*, 140 Cal.App.4th at p. 1282; *Denham*, *supra*, 2 Cal.3d at p. 566.) "'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Denham*, *supra*, at p. 566.)

In applying this standard of review, we also employ the equivalent of the substantial evidence test with respect to the trial court's factual findings where there is conflicting substantial evidence and more than one possible inference may be drawn. (*In re Executive Life Ins. Co*. (1995) 32 Cal.App.4th 344, 358.) "[T]o the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, an appellate court will review such factual findings under a substantial evidence standard. Our power in this regard '*begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without

12.

power to substitute its deductions for those of the trial court.'  [Citation.]"  (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

## II.    Proper Grounds Existed to Strike the Cross-Complaint

The trial court struck the cross-complaint pursuant to section 436.  That section provides, in relevant part, as follows:  "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper:  [¶] … [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  (§ 436.)  Subdivision (b) of section 436 is commonly invoked to challenge pleadings filed in violation of a deadline, court order, or requirement of prior leave of court.  (*Ferraro v. Camarlinghi*, *supra*, 161 Cal.App.4th at p. 528; *Leader v. Health Industries of America, Inc.*, *supra*, 89 Cal.App.4th at p. 613.)  A trial court has discretion to strike a pleading filed in disregard of established procedural requirements or court orders, such as where an amendment is filed without obtaining leave to amend, or where the pleading is not in conformity with a prior ruling of the court.  (*Leader v. Health Industries of America, Inc.*, *supra*, at p. 613.)  In the same vein, a pleading filed by a nonparty who has not first obtained leave to intervene in the action is subject to a motion to strike under section 436.  (*Milstein v. Turner* (1951) 107 Cal.App.2d 184, 185; *Estate of Walters* (1949) 89 Cal.App.2d 797, 798–800.)  As the statutory wording makes clear, a trial court may strike the errant pleading on a motion made by a party *or* on its own motion.  (§ 436 [the court may strike pleading "at any time in its discretion"]; *Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 631 [noncompliant complaint was "subject to the court's own motion to strike under section 436, subdivision (b)"].)

Here, CMSS's cross-complaint manifestly failed to comply with the established procedural laws of this state.  Section 428.10 only permits a cross-complaint to be filed by "[a] party against whom a cause of action has been asserted in a complaint or cross-complaint …."  Since CMSS was not named as a party to the complaint filed by

13.

A-American and since no cause of action was asserted against CMSS therein, CMSS did not have any right or standing to file a cross-complaint in the court action. In its appeal, CMSS suggests there was some ambiguity in the allegations on the issue of whether CMSS was a defendant because Cox was sued in the complaint as the alter ego of CMSS and CMSS Management. That suggestion is unconvincing for two reasons. First, CMSS concedes in its opening brief that CMSS was not named as a party to the complaint. Second, A-American's allegations were *not* unclear about who was being sued: Cox was being sued *individually* on the theory that, as alter ego of the entities, he was the actual responsible party under the complaint's allegations. Moreover, under the totality of the circumstances, CMSS would have known that it was not being sued in the trial court action because A-American was pursuing its claims against CMSS separately in the arbitration. We conclude that the cross-complaint filed by CMSS in the trial court was filed in violation of section 428.10 and, accordingly, the cross-complaint was subject to a motion to strike under section 436, subdivision (b), on that ground.

Additionally, because CMSS was not a party to the trial court action, but was an outsider to same, CMSS would have had to seek and obtain leave to intervene pursuant to section 387 to file a pleading therein. It did not do so. Because it improperly interjected itself into the action without first obtaining leave to intervene, the cross-complaint filed by CMSS was subject to a motion to strike under section 436, subdivision (b), on this additional ground. (*Milstein v. Turner*, *supra*, 107 Cal.App.2d at p. 185; *Estate of Walters*, *supra*, 89 Cal.App.2d at pp. 798–800.)

Finally, as the trial court expressly found in striking the cross-complaint on its own motion, the cross-complaint (along with Tony & Sons' answer thereto) was filed in violation of the trial court's stay order. The stay order was broadly worded, stating that "the above-captioned action is stayed, as to all parties and all causes of action, pending completion of the agreed-upon alternative dispute resolution procedure and issuance of the arbitrator's binding decision …." We believe the stay order was broad enough to

14.

encompass any and all proceedings in the court action that touched upon the matters sent by the court to arbitration (i.e., the entire civil action and all causes of action therein), including the filing of any cross-complaints that were integrally related to issues and claims in A-American's complaint, which was the case here. Also, because of the necessary overlap of issues between the main complaint and cross-complaint, the stay would have been of no benefit to the parties if the filing and prosecution of CMSS's cross-complaint could be treated as an exception to the stay. "The purpose of the statutory stay is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.]" (*Fed. Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374.) Furthermore, "[o]nce a court grants the petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration." (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796.) In light of these principles, of which the trial court would have been well aware, we believe it is most reasonable to construe the scope of the trial court's stay order as including the filing and prosecution of a potential cross-complaint such as the one filed by CMSS. Therefore, the filing of CMSS's cross-complaint was not in conformity with the trial court's standing order to stay the action pending arbitration.

On this issue of whether the filing of the cross-complaint violated the stay, CMSS seeks to take advantage of the fact that it was an outsider to the action by arguing that, since it was not a party and did not sign the stipulation to arbitrate, the order did not apply to it and, thus, it was free to file and pursue the cross-complaint. We disagree because, as noted above, the scope of the trial court's order was broad enough to cover the cross-complaint.[5] (See *Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 209

---

[5]     Also, it is reasonable to assume that, through Cox, CMSS would have been fully aware of the trial court's stay order.

[§ 1281.4 vests the court "'with authority to stay "the action or proceeding" as to all issues, as to all causes of action, and as to all parties, until arbitration is concluded'" whether or not the party seeking the stay was a party to arbitration agreement].)  As correctly stated by CastlePoint, "CMSS's odd argument that because it had improperly intruded into the action as a non-party it was free to disregard a standing court order plainly lacks merit."  We conclude that CMSS's filing of its cross-complaint without seeking leave or obtaining relief from the stay order, violated the trial court's stay order and provided an independent ground for striking the cross-complaint under section 436.

In conclusion, the cross-complaint was subject to being stricken by the trial court under section 436 for at least three reasons:  (1) CMSS was not a party to the action and, thus, it did not have any right or standing to file a cross-complaint under section 428.10; (2) CMSS did not seek leave to intervene in the action; and (3) the cross-complaint was filed in violation of the order staying the action.  Consequently, it appears from what has been considered so far that the trial court acted within the scope of its discretion under section 436 when it struck the defective cross-complaint in this case.[6]

III.    **Other Circumstances Did Not Show Abuse of Discretion**

CMSS argues, in essence, that *even if* the cross-complaint was technically filed in violation of procedural or other requirements, the trial court nevertheless abused its discretion in striking the cross-complaint if that ruling is considered in light of *other* factors involved in the case.  We now consider these arguments.

A.    **Propriety of CastlePoint's Intervention**

CMSS contends that the trial court erred in striking the cross-complaint because CastlePoint should never have been allowed to intervene in the first place.  The argument

---

[6]    While CMSS attempts to isolate the violation of the stay order, we reject that attempt. Each of these three reasons supported the trial court's decision to strike the cross-complaint.  But even if one reason was hypothetically deficient, either of the other two would suffice.  We affirm the trial court's decision when it reaches the correct result, even if the reason given by the trial court may have been incorrect.  (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

seems to be that if CastlePoint had not been granted leave to intervene, the trial court would not have had an occasion to consider grounds for granting a motion to strike the cross-complaint.

Preliminarily, we observe two significant weaknesses in CMMS's argument, both of which relate to the fact that the trial court struck the cross-complaint on grounds that were, to a significant extent, on the court's own motion or *sua sponte*. *First*, the assumption that, apart from CastlePoint's intervention, the trial court would never have stricken the cross-complaint is not necessarily accurate. The violation of the stay order and other procedural violations in filing the cross-complaint were flagrant defects that might very well have been spotted by the trial court in connection with other proceedings, such as CMSS's renewed application for a default judgment. If that had occurred, the motion to strike could have been granted on the trial court's own motion, regardless of whether CastlePoint had intervened. Thus, the fact that the trial court acted on grounds that were, at least in part, on its *own* motion substantially undermines CMSS's claim that if the trial court had not allowed CastlePoint to intervene, the cross-complaint would not have been stricken. *Second*, because a trial court has discretion to strike an improperly filed pleading at any time on its own motion,[7] we are not convinced that it is relevant how the pleading's defects were first brought to the trial court's attention. In fact, by analogy to another context in which trial courts have discretion to grant relief on their own motion—i.e., motions for reconsideration—we conclude it does not matter whether the information upon which the trial court struck the cross-complaint came to the trial court's attention as a result of CastlePoint's intervention (and subsequent motion to strike), or from the trial court's own inquiry, or some other source. (See, e.g., *In re*

---

[7] We note the trial court's discretion to strike an improper pleading is not only based on section 436, but also on a court's inherent power to prevent a party from disregarding established procedural processes. (*Loser v. E.R. Bacon Co*. (1962) 201 Cal.App.2d 387, 390; accord, *Leader v. Health Industries of America, Inc*., *supra*, 89 Cal.App.4th at p. 613.)

*Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1303–1304, 1308 [despite improperly filed motion under section 1008, a trial court may reconsider a prior order on its own motion; it was immaterial what may have triggered the trial court's insight into the need to exercise its inherent power to correct an erroneous ruling on its own motion]; *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108.)[8]

For the above reasons, CMSS's attack on the intervention order as an indirect means of challenging the trial court's order striking the cross-complaint falls short of the mark and is inadequate to demonstrate that an abuse of discretion occurred with respect to the order striking the cross-complaint. But, even assuming for the sake of argument that the *sua sponte* order striking the cross-complaint depended on the validity of CastlePoint's intervention, CMSS has failed to demonstrate that reversible error occurred with respect to the intervention order, as we proceed to explain below.

In its order granting intervention, the trial court explained the ground for its decision as follows: "[I]f CMSS obtains [a] default judgment against Tony Lopez and his construction company, CMSS will be able to bring a direct action against Castle[P]oint. This exposure to such direct liability has been repeatedly held sufficient to create a basis for insurer intervention in a third party action against the insured. [Citation.]" This specific rationale expressed by the trial court in its order is well established as a proper basis for granting intervention. As summarized by the Court of Appeal in *Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196 at page 1205: "'[A] judgment creditor who has prevailed in a lawsuit against an insured party may bring a direct action against the insurer subject to the terms and limitations of the policy.

---

[8] We would add that the equities do not favor CMSS on this particular issue. As discussed above, CMSS was itself a nonparty to the action but, unlike CastlePoint, it failed to obtain leave to intervene. It also did not seek relief from the stay order when it interposed its cross-complaint. So, here we have CMSS, a nonparty who intruded into the action by improperly filing a cross-complaint without judicial permission to intervene, and by means of which gained an advantage it arguably never should have had (i.e., Tony & Sons' default), now criticizing the intervention of CastlePoint who *did* obtain leave of the court. The scene may win points for irony, but not equity.

18.

[Citation.]' [Citation.] [¶] This exposure to such direct liability has been repeatedly held sufficient to create a basis for insurer intervention in a third party action against the insured. 'Intervention may … be allowed in the insurance context, where third party claimants are involved, when the insurer is allowed to take over in litigation if its insured is not defending an action, to avoid harm to the insurer.' [Citation.] [¶] Thus, for example, insurers have been permitted to intervene when the third party has obtained a default against the insured. [Citations.] Similarly, an insurer may intervene when its insured's answer has been stricken because its corporate status has been suspended. [Citation.]" (Fns. omitted; accord, *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386–387.)[9]

In opposing intervention, CMSS argued to the trial court that CastlePoint had refused to defend its insured and, as a result of such refusal, CastlePoint had forfeited whatever right it otherwise may have had to intervene in the action. The same argument is now made in the present appeal. Of course, CMSS is correct in principle that an insurer's right to intervene is "defeated … by a refusal to defend." (*Western Heritage Ins. Co. v. Superior Court*, *supra*, 199 Cal.App.4th at p. 1212.) As articulated in *Gray v. Begley* (2010) 182 Cal.App.4th 1509 at pages 1522–1523: "[I]f the insurer denies coverage *and* refuses to provide a defense, the insurer 'does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention. The rationale behind this rule is that by its denial, the insurer has lost its right to control the litigation.' [Citation.] When an insurer refuses to defend, it may be bound by a default judgment against its insured [citation], or a reasonable, noncollusive settlement reached by its insured with the claimant [citation]." (See *Hinton v. Beck* (2009) 176 Cal.App.4th 1378,

---

[9] In such circumstances, the elements for intervention under section 387, subdivision (a), have been found satisfied in particular cases. These elements are: (1) the intervener has a direct and immediate interest in the litigation; (2) the intervention will not enlarge the issues in the case, and (3) the reasons for intervention outweigh opposition by the existing parties. (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346.)

1384 ["an insurer who denies coverage and refuses to defend its insured does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention"].)

In addressing this argument in its order, the trial court stated that "[w]hile not wholly unpersuasive, [CMSS's] arguments in opposition are for the most part factual in nature and more appropriate for law and motion matters further down the road, rather than denial of a motion for leave to intervene." Although the trial court's comment about the matter being "not wholly unpersuasive" is somewhat unclear as to the court's actual level of consideration of that matter, it appears to imply at the very least that the trial court did not believe the evidence was such that it required a denial of the motion. Thus, CastlePoint was allowed to intervene, but a subsequent motion could be filed to address the issue further if CMSS so desired.[10] In the end, the concerns expressed by the opposing parties were found by the trial court to be outweighed by CastlePoint's substantial interest in intervening under the rationale of *Western Heritage Ins. Co. v. Superior Court*, *supra*, 199 Cal.App.4th at page 1205, particularly in light of the fact that a denial of intervention would likely "result in liability for Castle[P]oint for a [default] judgment" of approximately $1.3 million. With respect to its decision to allow intervention, the trial court also correctly noted that section 387 is to be liberally construed in favor of intervention. (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1505.)

On appeal, CMSS argues the trial court got it wrong. According to CMSS, the evidence presented in connection with the motion to intervene conclusively demonstrated that CastlePoint had, by means of delay or inaction, denied coverage and refused to defend its insured. Thus, CMSS insists the trial court abused its discretion when it

---

**10**     We note that CMSS could have brought such a motion and, if necessary, could have requested a continuance of CastlePoint's motion to strike if more time were needed. However, it does not appear from the record that CMSS pursued the matter further in the trial court.

20.

permitted CastlePoint to intervene in the action. On balance, we disagree. (*Lindelli v. Town of San Anselmo*, *supra*, 139 Cal.App.4th at p. 1505 [our review of an order granting or denying intervention is under an abuse of discretion standard].) As the summary below indicates, the evidence was not entirely on CMSS's side and did not necessarily require a conclusion that CastlePoint was guilty of refusing to defend Tony & Sons.

### 1. Evidence on Issue of Alleged Refusal to Defend Does Not Establish Trial Court Abused Its Discretion in Granting Intervention

We begin by noting the evidence offered *in opposition* to the motion to intervene on the issue of whether CastlePoint had refused to defend its insured. One of CMSS's attorneys, F. William Jackson, submitted a declaration attaching certain exhibits. Included were letters allegedly sent by Cervantes on behalf of Tony & Sons to CastlePoint. The letters tendered the A-American lawsuit to CastlePoint and requested that a defense be provided to Tony & Sons. CastlePoint objected at the hearing of the motion that these letters were not authenticated, were unsigned and the dates on them were crossed out and obviously altered. We have not been informed of any ruling on those objections. In any event, as will be seen below, it is not disputed that Cervantes tendered the A-American claims against Tony & Sons to CastlePoint by early 2010.

A declaration of David Ezra was also attached to CMSS's opposition. Ezra was an attorney representing Safeco, an insurance company insuring CMSS. Ezra's declaration summarized his efforts to get CastlePoint/SUA to cover CMSS as an additional insured and/or to provide coverage to Tony & Sons in the A-American litigation. Ezra's declaration stated that, in email communications with CastlePoint's claims examiner, Linda Reilly, during May and June 2011, he indicated to her that he would try to find out about the dates the construction work was performed, but he surmised the work would likely have been performed by Tony & Sons in 2006 or 2007, prior to the closing of the sale of the property in December 2007. He said there also may

21.

have been some work performed in 2008. According to Ezra, Reilly subsequently denied any additional insured coverage to CMSS.

Additionally, a declaration of David Weiland was submitted in opposition to the motion. Weiland was the attorney for Cox and CMSS. Weiland noted in his declaration that Safeco had agreed to defend his client subject to a reservation of rights. As a result of the reservation of rights, Weiland investigated other sources of potential coverage, including insurance coverage obtained by the contractor who built the storage facility at issue, Tony & Sons. After learning that CastlePoint/SUA was an insurer of Tony & Sons, Weiland forwarded or copied certain pertinent information to CastlePoint, including copies of correspondence. This included an April 14, 2011, letter that Weiland wrote to Rosemarie Winegarner of Blair & Company, which company was acting on behalf of a third party administrator for Lloyd's of London.[11] The April 14, 2011, letter stated that attachments thereto included pleadings and correspondence in the A-American lawsuit.[12] The letter further noted Weiland's understanding that Tony & Sons was involved in the construction of storage units during 2006, 2007 and 2008. Toward the end of the same letter, Weiland referred to the fact that a default had been taken against Tony & Sons in the litigation. Reilly responded by email that the matter referenced in the letter did not appear to be a claim that was assigned to her and requested that Weiland provide a claim number and/or forward it to the assigned adjuster. Weiland replied by email that he did not know of any claim number. Reilly then provided assistance to Weiland, per his request, in how to make a new claim on behalf of his clients.

---

[11] Lloyds of London apparently provided commercial general liability coverage to Tony & Sons at some point in time.

[12] In a supplemental declaration, Weiland stated that he had directed his secretary to transmit to Reilly, in addition to the April 14, 2011, letter, copies of the A-American complaint, arbitration demand, and notice of the court's order striking Tony & Sons' answer.

22.

Lopez also submitted a declaration opposing the motion to intervene. Lopez stated that Cervantes, the attorney he and Tony & Sons had retained, sent multiple letters to CastlePoint/SUA requesting that a defense be provided concerning the A-American lawsuit. These included some of the same unsigned letters with altered dates that were attached to the above referenced declaration of Jackson, purportedly sent in early 2010. Lopez's declaration included as an attachment a May 7, 2010, letter, apparently signed by Cervantes, informing CastlePoint that because no response to prior coverage requests had been given by CastlePoint, Cervantes believed that CastlePoint was acting in bad faith.

In *support* of the motion to intervene, CastlePoint submitted the declaration of its claims examiner in this matter, Linda Reilly.[13] Reilly stated that CastlePoint, formerly known as SUA, provided insurance coverage for Tony & Sons "during the period 7/30/2005 through 4/19/2007, and again during the period 1/04/2008 through 7/07/2008." The relevant claims file concerning Tony & Sons reflected that A-American's lawsuit against Tony & Sons was tendered by a letter dated February 23, 2010, from Tony & Sons' attorney, Robert Cervantes. Thereafter, CastlePoint made several unsuccessful attempts to obtain essential information from Cervantes and/or Lopez in order to ascertain if there was coverage. In particular, CastlePoint sought information as to the scope of work, dates of work, and date of completion of the work. The information was important for the determination of coverage because the subject policies had exclusions for work completed prior to the inception of the policies. For whatever reason, Cervantes and Lopez did not provide the information requested.

Reilly also stated in her declaration that on March 11, 2010 and June 28, 2010, Cervantes's assistant, Michael Braa, communicated with Reilly's predecessor at

---

[13] Reilly stated her official position was "Senior Claims Liability Examiner for the Tower Group Companies," and explained that "Tower Group Companies is the umbrella company for a number of insurance carriers, including CastlePoint .…" She took over handling the claims file in this matter in March 2011 from her predecessor, along with about 120 other newly assigned files.

23.

CastlePoint, Sandy Marcy,[14] about this matter. Braa stated that he did not know when the work was performed, the specific scope of the work, or whether there were any contracts. Braa further confirmed that the complaint by A-American had been answered, the parties had stipulated to arbitration and a stay of the civil action had been ordered. Marcy continued to urge Braa to obtain the pertinent information as to when the work was performed and completed so that she could conclude her coverage analysis. Braa subsequently responded that he was not able to confirm when the work was completed, and he explained further that Lopez spends a great deal of time in Mexico and is difficult to reach.

According to Reilly's declaration, CastlePoint made additional efforts in 2011 and 2012 to obtain the needed information from Cervantes, Braa, or Lopez and also engaged the services of a private investigator. The private investigator was hired to review documents on file with the City of Fresno in order to ascertain when the certificate of occupancy was issued, as well as to review the building permits and inspection sign-off records in an effort to determine when the work on the project was completed. The private investigator reported that the notice of completion date was in March 2005, a date which predated any of CastlePoint's policies insuring Tony & Sons.

On April 27, 2012, Lopez finally called CastlePoint and spoke to Reilly about the project. He informed CastlePoint that the work his company did on the project was performed in 2006 and 2007. Based on this information, on May 1, 2012, CastlePoint retained Attorney Michael Montgomery of Waters, McCluskey & Boehle to defend Tony & Sons.[15]

---

**14** Marcy handled this matter until March 1, 2011, at which point Reilly took over the claims file. Some of what Reilly's declaration reports is based on the records in the claims file from the time when Marcy was still handling it.

**15** After being assigned to represent Tony & Sons, Montgomery made numerous efforts to contact Tony Lopez of Tony & Sons, but at the time the motion to intervene was filed, Montgomery had still been unsuccessful in those efforts.

Reilly's acknowledged in her declaration that she had been contacted by coverage attorney, David Ezra, who represented Safeco, an insurer for CMSS. Ezra advised Reilly that he was tendering the defense of Safeco's insureds (CMSS and Cox) based on an assumption that CMSS and/or Cox were additional insureds under the CastlePoint policies. Since CMSS and Cox were not named as additional insureds, Reilly declined the tender by CMSS and Cox. In addition, Reilly's declaration acknowledged that David Weiland, private counsel for CMSS and Cox, had contacted Reilly by email and had copied her on a letter to an adjuster at Blair & Co. whereby Weiland demanded defense and indemnity from another insurance company. Reilly did not believe she reviewed the contents of that letter, but promptly sent an email response advising that the letter did not appear to involve a claim that had been assigned to her.[16] Reilly suggested that Weiland provide the claim number and forward the letter to the assigned adjuster. Weiland then asked how to go about presenting a tender for coverage, and she provided that information to him.

As noted previously above, the trial court postponed the motion to intervene to allow the deposition of Reilly to be taken by CMSS and also to allow the parties to file supplemental papers. Reilly was deposed on January 8, 2013. In her deposition, Reilly testified that CastlePoint did not learn that CMSS had filed a cross-complaint or that a default had been taken against Tony & Sons until such information was discovered by its retained attorney, Michael Montgomery, in approximately May 2012. Reilly's deposition testimony included the following series of questions and answers:

> "Q. … So from the beginning of your handling of the claim file through today, you've never seen a cross-complaint by Mr. McQuillan's office on behalf of CMSS against Tony [&] Sons?
>
> "A. No.

---

[16] In her deposition, Reilly stated she had just been assigned 120 files and did not at that time recognize the name as one of her claims files.

"Q.     … And any time before your retention of Mr. Montgomery's office to represent Tony [&] Sons in May of 2012, did anyone tell you that Tony [&] Sons had been subject to default in the A-American proceedings?

"A.     No.  [¶] … [¶]

"Q.     … Did you understand Mr. Wieland to be presenting a matter on behalf of CMSS to Tower for coverage?

"A.     Yes."  [¶] … [¶]

"Q.     And you understood Mr. Ezra to be seeking coverage on behalf of Safeco and CMSS from CastlePoint?

"A.     Yes.

"Q.     At any point in all of your communications with Mr. Weiland's office or Mr. Ezra's office, did anyone provide you with a copy of a cross-complaint that CMSS had filed against Tony [&] Sons?

"A.     No.

"Q.     Did they in any of those communications mention such a cross-complaint?

"A.     No.

"Q.     Did either Mr. Weiland's office or Mr. Ezra's office mention to you in words or substance that a default had been entered against Tony [&] Sons?

"A.     No.

"Q.     Are you aware that a default had, in fact, been entered before your communications with Mr. Weiland's office and Mr. Ezra's office?

"A.     Was I aware?

"Q.     Yes.

"A.     No.  No.

"Q.     Did … anyone from Mr. Cervantes' office ever provide you with a copy of any cross-complaint on behalf of CMSS against Tony [&] Sons?

26.

"A.      No.

"Q.      Has anyone before today ever informed you that Mr. McQuillan's office submitted a cross-claim in arbitration proceedings on behalf of CMSS against Tony [&] Sons?

"A.      No.

"Q.      Have you ever seen such a cross-claim?

"A.      No.

"Q.      At any time before the retention of Mr. Montgomery's office in May of 2012, did anyone from Mr. McQuillan's office, from Mr. Cervantes' office, from Mr. Ezra's office or from Mr. Wieland's office suggest in words or substance to you that Tony [&] Sons or Tony Lopez were in any jeopardy?

"A.      No."

In summary, the evidence relied on by CastlePoint reflected that, in early 2010, Cervantes tendered the A-American lawsuit to CastlePoint, requesting that a defense be provided to Tony & Sons. CastlePoint understood that a civil action had been filed by A-American against Tony & Sons and that the action had been stayed pending arbitration. Thereafter, CastlePoint attempted to find out when the work was performed by Tony & Sons so that it could decide whether coverage existed, but that effort was frustrated until Tony Lopez finally contacted Reilly in April 2012. Until that time, CastlePoint was unaware that CMSS had filed an unauthorized cross-complaint in the civil action or that a default had been taken against Tony & Sons.

On the basis of Reilly's version of events, including her declaration and deposition testimony, the trial court found that the earliest CastlePoint was aware of the cross-complaint was "April of 2012 when Tony Lopez called Ms. Reilly and notified her that there was work done during the coverage periods." As a result of this finding, and because "[t]he opposition papers [did] not demonstrate adequate facts to the contrary,"

27.

the trial court concluded that the motion to intervene (initially filed in June 2012) was "not untimely" and that CastlePoint had not been "dilatory in requesting intervention."

As outlined above, there was at least some evidence to support an inference that CastlePoint did not refuse to defend Tony & Sons. Consequently, it does not appear that the evidentiary presentation relating to refusal to defend is sufficient to clearly establish the trial court abused its discretion in granting the motion.

Moreover, we believe this case was unique in certain key respects that supported the trial court's exercise of discretion to grant intervention. As noted, when CastlePoint learned that litigation was filed by A-American against Tony & Sons, it *also* understood that the matter was sent to arbitration and the entire court action was *stayed*.[17] No liability was found against Tony & Sons to A-American in the arbitration, but solely against CMSS. Therefore, we are not dealing with the question of whether failure to promptly defend Tony & Sons in the arbitration tribunal resulted in liability against Tony & Sons there. Rather, we are dealing with an irregular and unexpected development in the court action: The intrusion of an unauthorized cross-complaint by nonparty CMSS against Tony & Sons, which pleading was unilaterally interjected into that stayed action without leave and contrary to procedural law. As the trial court found, CastlePoint had no knowledge of this rogue pleading until April 2012, when Lopez finally contacted CastlePoint. At that point, CastlePoint moved quickly to retain counsel to defend its insured in the court action relating to the cross-complaint. In summary, it was in the midst of this highly unusual context that the trial court indicated (in its order granting intervention) that, although the opposition arguments relating to refusal to defend were

---

**17** As we noted above regarding the effect of the stay order, "[o]nce a court grants the petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration." (*Brock v. Kaiser Foundation Hospitals*, *supra*, 10 Cal.App.4th at p. 1796.)

"not wholly unpersuasive," nevertheless the trial court's discretion would be exercised in favor of allowing CastlePoint to intervene.[18]

On balance, we are unable to conclude the trial court acted beyond the range of its discretion when it allowed CastlePoint to intervene, and this conclusion is further strengthened by the unique and irregular circumstances before the trial court. Since CMSS has not established that the trial court exceeded the bounds of reason in granting intervention to CastlePoint, its challenge to that ruling fails. Therefore, the alleged invalidity of the intervention order does not provide support to CMSS's position on appeal that the trial court erred in striking the cross-complaint.

### 2. Trial Court's Procedural Rulings to Allow Subsequent Motions Did Not Establish an Abuse of Discretion in Granting Intervention

Additionally, CMSS argues that intervention was improperly granted because the trial court described CMSS's assertions on the issue of refusal-to-defend as "not wholly unpersuasive" and allowed that a subsequent motion could be brought on the law and motion calendar on that factual issue. According to CMSS, the trial court abused its discretion by granting intervention without first fully and conclusively adjudicating the refusal-to-defend issue. We disagree that CMSS has shown a prejudicial abuse of discretion. The order granting the motion expressly confirmed that the trial court had reviewed the parties' declarations, and the trial court acknowledged its understanding that intervention is defeated by a refusal to defend. As noted previously above, although the trial court's comment about the matter being "*not wholly unpersuasive*" is somewhat unclear as to the court's actual level of consideration of that matter, it appears that the trial court did not believe the state of the evidence required a denial of the motion. Thus,

---

**18** In so holding, the trial court indicated that, under the circumstances, the case should follow certain principles expressed in *Western Heritage Ins. Co v. Superior Court*, *supra*, 199 Cal.App.4th at page 1205, which permit an insurer to intervene in a third party action against the insured where section 11580 of the Insurance Code would allow a judgment creditor who has or will obtain a default judgment therein to proceed directly against the liability insurer.

the trial court allowed CastlePoint to intervene, but a subsequent motion could be filed to address the issue further if CMSS so desired. CMSS has not adequately shown how the trial court's approach exceeded the bounds of reason under the circumstances. Nor has prejudice been shown. CMSS could have brought such a motion and, if necessary, could have requested a continuance of CastlePoint's motion to strike if more time was needed. However, it does not appear from the record that CMSS pursued the matter further in the trial court.

Similarly, CMSS makes the argument that the trial court put the cart before the horse by granting intervention without first resolving the issue raised by CMSS and Tony & Sons that CastlePoint's appointment of Montgomery created a conflict of interest with the insured and warranted Montgomery's disqualification. The trial court held that it would not address that issue until an actual motion to disqualify counsel was on file. Thus, CMSS and/or Tony & Sons were free to promptly pursue a motion to disqualify counsel after intervention was granted, but the record does not reflect that they actually did so. CMSS has failed to show that, by simply requiring parties to bring a separate motion to disqualify counsel, the trial court prejudicially abused its discretion in granting intervention.

### B.  Equitable Estoppel

CMSS argues that principles of equitable estoppel insulated the cross-complaint from being subject to a motion to strike by CastlePoint. For at least two reasons we disagree that equitable estoppel provides a basis for reversal of the trial court's order striking the cross-complaint. First, the cross-complaint was stricken on the trial court's *own* motion based on violation of the stay order and, therefore, any claim that CastlePoint was estopped does not impact the court's *sua sponte* order. Second, CMSS has failed to persuade us that, under the circumstances, equitable estoppel would preclude CastlePoint from raising the grounds it did for striking the cross-complaint (i.e., that CMSS was not a

30.

party and did not obtain leave to intervene). Below, we briefly explain why that theory does not assist CMSS in this appeal.

"'[T]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing.' [Citation.] 'The essence of an estoppel is that the party to be estopped has by false language or conduct "led another to do that which he … would not otherwise have done and as a result thereof that he … has suffered injury." [Citation.]' [Citation.]" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.)[19] The elements of estoppel are "'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]' [Citation.] The detrimental reliance must be reasonable." (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, §§ 190–191, pp. 527–529.)

CMSS argues that CastlePoint was estopped to raise the legal defects regarding the cross-complaint because, at the time the cross-complaint was filed, Tony & Sons did not file a pleading objection in court, but instead filed an answer. As a result of such conduct, CMSS purportedly was led to believe the cross-complaint was acceptable and would not be challenged. This allegedly caused prejudice because if the defects had been raised by a motion at the outset, CMSS "easily could have remedied them within a matter of a few weeks." Instead, CMSS went to the arbitration employing a strategy that relied on the existence of the Tony & Sons' default under the cross-complaint.

---

**19** As expressed in Evidence Code section 623: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

31.

We are not persuaded that CMSS satisfied the elements of equitable estoppel. Aside from the fact that CMSS, *not* Tony & Sons (or CastlePoint), was responsible for the legal propriety of CMSS's pleading, the record shows that objections *were* made to the cross-complaint, albeit not in a formal motion. Shortly after the cross-complaint was served, Cervantes sent a letter to CMSS's attorney, Steven McQuillan, objecting to the propriety of the cross-complaint because (1) the proceedings in the superior court were stayed by court order and (2) CMSS was not a party to the action and, thus, had no standing to cross-complain against Tony & Sons. In that letter, Cervantes asked that McQuillan "voluntarily strike the cross-complaint." Thus, CMSS was alerted to the pleading's legal deficiencies at the very beginning, but elected not to remedy them, choosing instead to rely on its assumptions that the allegations were sufficiently ambiguous to permit the cross-complaint and/or that the stay did not apply. Thereafter, when Tony & Sons filed an answer to the cross-complaint, Cervantes warned that the answer was being filed as a cautionary pleading only.

Here, because CMSS was alerted to the cross-complaint's legal and procedural defects at the outset, and since CMSS was responsible for the propriety of its own pleading, when CMSS declined to remedy those defects, it did so at its own risk. Nothing in the record suggests there were any words or conduct on the part of Tony & Sons or CastlePoint that would have reasonably misled CMSS or induced it to refrain from taking prompt curative steps with respect to the cross-complaint. In short, equitable estoppel clearly falters because CMSS was not ignorant of the problems relating to the cross-complaint, was not induced by Tony & Sons or CastlePoint to refrain from corrective action, and could not reasonably rely that the cross-complaint was invulnerable to a subsequent motion to strike. On this record, we conclude that elements (2), (3) and (4) of equitable estoppel were lacking. As a result, equitable estoppel did not apply to insulate the cross-complaint from the motion to strike.

## IV.  Tony & Sons' Cross-Appeal

In its cross-appeal, Tony & Sons makes many of the same arguments that were raised by CMSS and addressed by us in the discussion above.  In a nutshell, Tony & Sons contends the trial court abused its discretion in striking the cross-complaint because CastlePoint should never have been permitted to intervene in the action in the first place.  Thus, following the approach taken by CMSS, Tony & Sons' cross-appeal attacks the order striking the cross-complaint indirectly by challenging the validity of the intervention order.  According to Tony & Sons, intervention was improper because CastlePoint refused to defend Tony & Sons and, consequently, CastlePoint lost any right to intervene in the action.  Furthermore, Tony & Sons maintains that CastlePoint's refusal to defend made it necessary for Tony & Sons to enter into a protective settlement with CMSS.  That settlement was effectively undone when the trial court struck the cross-complaint, since the settlement allegedly depended on the default against Tony & Sons on the cross-complaint remaining intact.  Also, the existence of the settlement allegedly meant that CastlePoint had a conflict of interest with its insured and should not have been permitted to intervene.  We address each of these arguments below.

Before doing so, however, we observe that Tony & Sons' attack on the intervention order as a method of challenging the order striking the cross-complaint suffers from the same flaw we noted regarding CMSS's similar argument.  Namely, the trial court's order striking the cross-complaint was on the court's *own* motion, based on grounds raised by the court itself (i.e., the violation of the stay order) and, therefore, it did not depend on the validity of the intervention order.  Whether or not the trial court had granted CastlePoint's intervention motion, the court had independent discretion to strike *sua sponte*, at any time, the subject cross-complaint, which was "not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  (§ 436, subd. (b).)  Accordingly, the attack by Tony & Sons on the intervention order does not and cannot adequately demonstrate that the trial court abused its discretion in striking the

33.

cross-complaint.  Nevertheless, as we did with CMSS's similar argument, we briefly address Tony & Sons' challenge to the intervention order in an abundance of caution. Although unnecessary to our disposition, we believe our discussion thereof will reflect that, even assuming the order striking the cross-complaint depended on the validity of the intervention order, the cross-appeal would still fail.

With that caveat in mind, we now proceed to Tony & Sons' arguments that intervention was improperly granted.

### A.  CastlePoint's Alleged Lack of Direct Interest Based on Asserted Refusal to Defend

Tony & Sons asserts that intervention was erroneously granted by the trial court based on the evidence that CastlePoint had refused to defend its insured, Tony & Sons. We start by reiterating the relevant principles of law:  "[I]f the insurer denies coverage *and* refuses to provide a defense, the insurer 'does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention.  The rationale behind this rule is that by its denial, the insurer has lost its right to control the litigation.' [Citation.]  When an insurer refuses to defend, it may be bound by a default judgment against its insured [citation], or a reasonable, noncollusive settlement reached by its insured with the claimant [citation]." (*Gray v. Begley*, *supra*, 182 Cal.App.4th at pp. 1522–1523: accord, *Hinton v. Beck*, *supra*, 176 Cal.App.4th at p. 1384 ["an insurer who denies coverage and refuses to defend its insured does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention"].)[20]

We have already summarized herein the relevant facts presented to the trial court on the issue of refusal to defend in our discussion above addressing CMSS's appeal on

---

[20]     Tony & Sons' opening brief in the cross-appeal argues that whenever an insurer fails to take advantage of an opportunity to defend the insured, it loses the right to intervene.  More accurately stated, however, the rule is that where an insurer denies coverage and refuses to defend, the right to intervene is lost.

that ground.  In that part of our opinion, we held that because there was some substantial evidence to support CastlePoint's position that it did not refuse to defend Tony & Sons, we were unable to conclude that the trial court clearly committed an abuse of its discretion in granting the motion to intervene.  We further held that unique procedural facts of the case supported the exercise of the trial court's discretion to allow CastlePoint to intervene.  Here, Tony & Sons' cross-appeal relies on the same factual record, arguing in essence that because CastlePoint did not defend Tony & Sons between 2010 and 2012, the prolonged delay as a matter of law constituted an implied refusal to defend.  However, as indicated previously, we do not agree that the evidence presented in the trial court required that conclusion, or that it was the only permissible inference.  To reiterate, Reilly's declaration and deposition testimony reflected that CastlePoint understood in 2010 that a civil action had been filed by A-American against Tony & Sons, but the action had been fully stayed while the dispute proceeded to arbitration.  Meanwhile, CastlePoint attempted to find out when the work was performed by Tony & Sons to determine whether coverage existed, but that effort was frustrated until Tony Lopez finally contacted Reilly in April 2012.  Based on Reilly's testimony, until Lopez called her and Montgomery was retained to defend Tony & Sons (i.e., April/May 2012), CastlePoint had been unaware that nonparty CMSS had filed an unauthorized cross-complaint in the civil action against Tony & Sons or that a default had been taken on said cross-complaint.  The trial court's finding on that timing issue was supported by substantial evidence.  Under all of the circumstances, including the unique procedural situation below, we hold (as we did concerning CMSS's similar argument) that Tony & Sons has not demonstrated the trial court's intervention order exceeded the bounds of reason due to the alleged refusal to defend.

### B.      Alleged Expansion of Issues

Tony & Sons additionally argues that intervention should not have been granted to CastlePoint because doing so impermissibly enlarged the issues in the litigation.  (See

*Truck Ins. Exchange v. Superior Court*, *supra*, 60 Cal.App.4th at p. 346 [one element for allowing intervention under § 387, subd. (a), is that intervention will not enlarge the issues in the case].) We disagree. There is no attempt here to interject new issues beyond the scope of the lawsuit. (See, e.g., *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655, 661 ["the interveners may not enlarge the issues so as to litigate matters not raised by the original parties"]; *Kuperstein v. Superior Court* (1988) 204 Cal.App.3d 598, 600–601 [intervention impermissibly interjected collateral coverage issues into the case].) Rather, in the present case, CastlePoint merely sought to raise the legal inadequacies of the cross-complaint, including that it failed to state any cause of action and was not filed in conformity with law. We do not believe that said intervention by CastlePoint—the impact of which amounted to shining the light on the cross-complaint's manifest deficiencies and violations of procedural law—represented a material expansion of the scope of the issues in the case.

## C. Interests of Parties Opposing Intervention

Tony & Sons further argues that intervention was improperly granted because any grounds for intervention were assertedly outweighed by opposing reasons raised by the existing parties in the action. (See *Reliance Ins. Co. v. Superior Court*, *supra*, 84 Cal.App.4th at p. 386 [intervention must "outweigh any opposition by the [existing] parties"].) One of the main arguments presented in opposition to intervention was Tony & Sons' desire to preserve the settlement arrangement that Tony & Sons had reached with CMSS. Allegedly, Tony & Sons had reached a settlement arrangement with CMSS to protect itself from liability after it appeared that CastlePoint had refused to defend. According to Tony & Sons, since the settlement terms depended on the default remaining intact, CastlePoint's intervention to challenge the cross-complaint on which the default was taken allegedly undermined the settlement.

As to the existence of the alleged settlement, there was evidence presented to the trial court of an oral settlement agreement between Tony & Sons and CMSS, apparently

occurring shortly before or in close proximity to the time CastlePoint sought to defend and intervene. The declaration of CMSS's attorney, Weiland, filed in June 2012, stated as follows regarding this alleged agreement: "I called Mr. Lopez using his cell phone number in March and April of 2012, and spoke with him more than once regarding the prove-up proceedings. I explained to Mr. Lopez that [CMSS] would refrain from executing on the default judgment against [Tony & Sons] if he would agree to assign to [CMSS] his rights against [CastlePoint] … for bad faith and accept service of the hearing notice and supporting declarations for the prove-up hearing. He agreed." Additionally, a subsequent declaration signed by Lopez stated an erroneous belief on his part that "[a]n award was made against us for $1,376,739," which motivated his desire to settle with CMSS. Of course, the only award that had been entered was against CMSS, *not* against Lopez or Tony & Sons and, in actuality, Tony & Sons had been dismissed by the arbitrator after a finding of no liability was made. Lopez's declaration then stated: "In order to protect myself financially, I agreed with CMSS that in return for leaving the default in place and assigning some of our rights against [CastlePoint], CMSS would give me in return a covenant not to execute on the judgment it had obtained against us." Again, no judgment had been obtained against Lopez or Tony & Sons, so that assumption was entirely mistaken. Nevertheless, the terms of the agreement as described by Lopez were consistent with what was stated in Weiland's declaration.

The legal framework to be considered is that "[w]*hen an insurer refuses to defend*, it may be bound by a default judgment against its insured [citation], or a reasonable, noncollusive settlement reached by its insured with the claimant [citation]." (*Gray v. Begley*, *supra*, 182 Cal.App.4th at pp. 1522–1523, italics added.) Since we have concluded herein that the record concerning the refusal-to-defend issue did not establish the trial court abused its discretion in granting the intervention motion, it follows by parity of reasoning that Tony & Sons' settlement arrangement that was allegedly necessitated by the same purported refusal to defend likewise does not establish a clear

37.

abuse of discretion. Furthermore, we stress a point made by us previously herein, that we are dealing with intervention that was granted in light of the bizarre and irregular circumstance of an unauthorized, improperly filed cross-complaint interposed without permission into a previously stayed court action, of which pleading CastlePoint was unaware until April 2012, when Lopez finally contacted CastlePoint. It was within this highly unusual context that the trial court held that, although the opposition arguments relating to refusal to defend were "not wholly unpersuasive," nonetheless the court's discretion would be exercised in favor of granting the motion. On balance, and particularly when the unique circumstances before the trial court are considered, we are unable to conclude the trial court acted beyond the range of its broad discretion when it allowed CastlePoint to intervene, notwithstanding Tony & Sons' concerns about its settlement efforts.

On this issue, we note that CastlePoint suggests the purported settlement "deal" between CMSS and Tony & Sons is a red herring. CastlePoint argues that the alleged deal is wholly illusory, because the deal was never finalized in writing and, more importantly, CMSS previously assigned all of its rights versus Tony & Sons to A-American. The assertion that CMSS assigned all of its rights over to A-American is based on the terms of the purchase agreement between CMSS and A-American, as was referenced in the pleadings, which purchase agreement provided that CMSS was required to assign to A-American all warranties and all of CMSS's rights against contractors and subcontractors on the project, which would obviously include Tony & Sons and Lopez. Both CMSS and Tony & Sons[21] oppose CastlePoint's line of argument on the grounds that (1) the record does not establish that CMSS actually assigned its rights, but only that it was supposed to do so in the future and (2) even if it occurred, the assignment would not necessarily apply to subsequently accruing rights of indemnity. We find that this

---

[21]    A joint reply brief was filed herein by these parties.

38.

particular issue is not adequately developed on appeal for us to conclusively decide the matter. Also, since as discussed above, the intervention order is sustainable without the necessity to consider the illusory agreement argument, we decline to reach it. CastlePoint further argues that the entire cross-complaint is a sham or utterly without merit, which claims we briefly comment on in part V.

### D. Disqualifying Conflict of Interest

Finally, Tony & Sons' cross-appeal argued that intervention should not have been granted because of an alleged disqualifying conflict of interest on the part of CastlePoint and/or its attorney. Specifically, Tony & Sons had an interest in keeping the default in place to preserve the terms of its settlement arrangement with CMSS; whereas, CastlePoint and Montgomery were seeking to raise defenses to the cross-complaint that would put the default (and the settlement) in jeopardy. This point was articulated by the parties opposing the intervention motion, with a request that the trial court disqualify Montgomery and his law firm. The trial court's order granting intervention stated as follows: "Finally, the opposition papers contain a request to disqualify Mr. Montgomery and his firm from representing Castle[P]oint. Defendants have not brought a noticed motion to disqualify counsel. Without a separately noticed motion, the court will not consider such a request in connection with a motion for leave to intervene. As such the court's ruling on leave to intervene in no way addresses disqualification."

The trial court plainly invited Tony & Sons or CMSS to bring a motion to disqualify counsel, at which point the matter would be considered and resolved. There is no reason to believe it could not have been resolved in a prompt fashion by the trial court. Despite that invitation to pursue the issue by a separate motion, nothing in the record reflects that Tony & Sons or CMSS ever took that relatively simple step. Also, in response to the claim that Montgomery should have been disqualified, CastlePoint points out that Lopez successfully rebuffed the attempts by Montgomery to become his attorney of record and provide a defense. And when the complaint-in-intervention was actually

39.

filed, it reflected that another law firm had associated (i.e., Nielsen, Haley & Abbott LLP), and that it was the Nielsen firm that actually filed and served the pleading on behalf of CastlePoint. Based on the foregoing, the attorney disqualification question was far from clear, and we conclude that Tony & Sons has failed to demonstrate on appeal that the trial court's ruling directing that a separate motion be filed was an abuse of discretion.

As to the broader issue of a conflict of interest, even assuming *arguendo* that it would ordinarily have been inappropriate to grant intervention where the insured had asserted such a conflict may exist, we believe it was *not* an abuse of discretion to allow CastlePoint's intervention in this particular instance, in light of the peculiar procedural facts and circumstances before the trial court, as we have explained repeatedly herein. For all of the above reasons, Tony & Sons' cross-appeal has failed to establish an abuse of discretion in regard to the intervention order as an arguable basis for challenging the order striking the cross-complaint.

## V.     Other Issues and Summary of Disposition

In opposing the present appeal and cross-appeal, CastlePoint makes the point that even if the cross-complaint had not been stricken by the trial court, CMSS could not have recovered on its cross-complaint as a matter of law. Thus, according to CastlePoint, no prejudice can be shown to have resulted from the trial court's order striking that pleading. To support this argument, CastlePoint challenges the validity of the two essential causes of action alleged in the cross-complaint: (1) equitable or implied indemnity and (2) express indemnity.[22] These were the same grounds raised in CastlePoint's motion for judgment on the pleadings filed in conjunction with its motion to strike. As to the claim for equitable indemnity, CastlePoint correctly observes that the law recognizes no right to

---

[22]     CastlePoint also asserted that CMSS assigned all of its rights against Tony & Sons to A-American, which allegedly divested it of any right or standing to sue Tony & Sons in the cross-complaint. We briefly alluded to this assertion above, and we declined to reach that matter.

equitable indemnity for a liability based on breach of contract. (See *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1040–1041 & fn. 2 [so holding].) Here, the $1.3 million arbitration award against CMSS was based solely upon breach of written warranties in the contract between CMSS and A-American. No damages were awarded on A-American's tort claims against CMSS. On its face, this would appear to rule out any basis for CMSS's cause of action for equitable indemnity against Tony & Sons.[23] The joint reply brief filed herein by Tony & Sons and CMSS has no answer to this argument that the equitable indemnity cause of action fails.

As to CMSS's cause of action for express indemnity, CastlePoint points out that CMSS has never alleged any specific terms of such an agreement, and no contract between CMSS and Tony & Sons has ever been produced and no express indemnity language has ever been quoted. The failure to produce such a contract between CMSS and Tony & Sons was one of the reasons the trial court had denied CMSS's request for a default judgment. It certainly appears that CMSS will not be able to prove its express indemnity cause of action, at least under the current state of the evidence. (See *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co*. (1991) 234 Cal.App.3d 1724, 1737 [express indemnity rests solely on the contract of the parties; "it is the language of the contract, rather than the equities of the situation which govern"].) In reply to this argument, CMSS and Tony & Sons argue that the inability to locate a copy of the contract at the time of the pleading motion below does not establish that the parties will not be able to locate it, or prove its terms, subsequently. In other words, it would go

---

**23** Another form of equitable indemnity is referred to as implied contractual indemnity, which is based on contractual language not specifically dealing with indemnification. (See *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1029.) Of course, a lack of any contract between Tony & Sons and CMSS would be fatal to such a claim, as it would be to the claim of express indemnity.

beyond the purview of a motion for judgment on the pleadings to resolve such an evidentiary issue.

To the above argument, CastlePoint adds the following in support of its position: "Despite all of the dramatic and feverish charges tossed about in [Tony & Sons'] brief, we must step back and realize that cross-appellants have suffered no harm, and there is no judgment against them. They were sued by A-American in the main complaint, but those claims were dismissed in a binding arbitration award [citation] that was reduced to a judgment. [Tony & Sons] was also sued by CMSS in a cross-complaint, but that cross-complaint was stricken by the court *sua sponte*. Nothing remains pending against them. In the event CMSS were to attempt to file an independent action, CastlePoint would defend on the grounds set forth above, and CMSS's action would surely fail."

We find it to be unnecessary to reach the merits of CastlePoint's contentions that no prejudice has been suffered, or that the causes of action in the cross-complaint fail on the merits as a matter of law, since the trial court's *sua sponte* ruling to strike the cross-complaint is sustainable apart from consideration of those contentions.

To recapitulate, the trial court here was confronted with an unauthorized cross-complaint filed by a nonparty without leave and in violation of the court's order staying the action. The trial court struck the cross-complaint *on its own motion* on the ground that it was improperly filed in disregard of the stay order. In doing so, the trial court indicated that, in light of the order staying the action, neither the cross-complaint nor the answer should ever have been filed. Implicitly, the trial court appears to have concluded that CMSS should not have been able to take advantage of the fallout of its improper and unauthorized pleading. We have concluded herein that the trial court's order striking the cross-complaint on its own motion was within its broad and inherent discretion under section 436. Furthermore, because the order was properly entered on the court's own motion, it was not dependent on the validity of the intervention order. But, even assuming hypothetically that the order striking the cross-complaint did depend on the

validity of the intervention order, we have held that under the unique facts before the trial court, it was within its discretion to strike the cross-complaint.

## **DISPOSITION**

The orders granting CastlePoint's motion to intervene and motion to strike the cross-complaint are affirmed. Costs on appeal are awarded to CastlePoint.


_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.